**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TAKESHI OGAWA,

    Petitioner - Appellant,

v.

KYONG KANG,

    Respondent - Appellee.

No. 18-4082

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:18-CV-00335-DAK)**
_____

John Robinson, Jr. (Wesley D. Felix, with him on the briefs), of Deiss Law, Salt Lake City, Utah, for Petitioner-Appellant.

Cory R. Wall (Gregory B. Wall, with him on the brief), of Wall & Wall, Salt Lake City, Utah, for Respondent-Appellee.
_____

Before **MATHESON**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

The Hague Convention on the Civil Aspects of International Child Abduction (the Hague Convention or the Convention) prohibits a parent from wrongfully removing a child from one country to another when doing so would violate another parent's "rights of custody." Art. 3, *done at the Hague* Oct. 25, 1980, T.I.A.S. No.

11670 (entered into force in the United States July 1, 1988; entered into force in Japan Apr. 1, 2014); *see also* 22 U.S.C. § 9001 (implementing Convention). Here, Japanese national Takeshi Ogawa brought a Hague Convention action against his former wife, South Korean national Kyong Kang, alleging that she wrongfully removed their twin daughters from Japan to the United States in violation of his rights of custody and seeking an order requiring the twins to return to Japan. The district court disagreed and denied Ogawa's petition, concluding that (1) the twins' removal to the United States did not violate Ogawa's rights of custody and, alternatively, (2) even if their removal was wrongful, the twins objected to returning to Japan. Ogawa now appeals. For the reasons discussed below, we conclude that Ogawa fails to make a prima facie showing that he has any rights of custody as the Convention defines them. Accordingly, we affirm the district court's order.[1]

**Background**

In 2003, Ogawa and Kang married in Japan. In 2006, Kang gave birth to twin girls. Until 2012, the family lived together, primarily in Japan. But in March 2013, Ogawa and Kang divorced.

Married couples in Japan may divorce by agreement without judicial involvement. And when they do, the divorce agreement may provide the terms of any child-custody arrangements. *See* Minpō [Civ. C.] art. 763, 766, para. 1 (Japan),

---

[1] Because we conclude that the twins' removal was not wrongful, we need not and do not address Ogawa's assertion that the district court erred in finding the twins objected to returning to Japan.

http://www.japaneselawtranslation.go.jp/law/detail/?id=2252&vm=02&re=02&new=1.[2] Ogawa and Kang's divorce agreement (the Divorce Agreement) provides such terms. Ogawa filed an English translation of the Divorce Agreement with the district court. That translated Divorce Agreement is attached to this opinion as an appendix. The parties agree the translation is accurate.

Several provisions of that agreement are particularly relevant here. First, under the heading "the person who has parental authority," the Divorce Agreement states that Kang "shall obtain parental authority over" the twins, Ogawa "shall obtain custody of" the twins, and Ogawa "shall give due consideration to the welfare of [the twins] when exercising custody." App. 45–46. Under the same heading, the Divorce Agreement also provides that Ogawa "shall hand over [the twins] to [Kang] on the last day of March 2017[;] however, [Ogawa] shall continue to maintain the right of custody of [the twins]." *Id.* at 46. Next, under the heading "[c]hild [s]upport, etc.," the Divorce Agreement states that "[r]egardless of which party is entitled to custody, [Ogawa] shall acknowledge that he is obliged to pay 30,000 yen/month for each child for a period beginning in April 2017 until the month when [the twins] reach 20 years of age as child support to cover actual childcare expenses." *Id.* Finally, under the

---

[2] The parties agree we may rely on this translation of the Japanese civil code, prepared by the Japanese government. *See generally* Civil Code (Part IV and Part V), Japanese Law Translation Database System (Jan. 30, 2014), http://www.japaneselawtranslation.go.jp/law/detail/?id=2252&vm=02&re=02&new=1.

heading "[r]ight of visitation or other contacts," the Divorce Agreement states that "either party can visit [the twins] once a year." *Id.* at 47.

After the divorce, the twins lived in Japan with Ogawa. But in October 2017, the twins traveled to South Korea to visit Kang's family. While the twins were there, Kang took them to the United States without Ogawa's permission.

In April 2018, Ogawa filed his Hague Convention petition in the district court. Before resolving the petition, the district court conducted two hearings and heard testimony from two witnesses who testified about the Divorce Agreement and Japanese law. The court also interviewed each twin separately outside the presence of Ogawa, Kang, and their lawyers.

The district court denied the petition, concluding that Ogawa failed to make a prima facie showing that Kang breached his rights of custody by bringing the twins to the United States. *See* Hague Convention, art. 3 ("The removal or the retention of a child is to be considered wrongful where . . . it is in breach of rights of custody attributed to a person . . . ."). Alternatively, the district court concluded that, even assuming Ogawa made such a prima facie showing, the mature-child exception to a Hague Convention petition would bar the twins' return. *See* Hague Convention, art. 13 ("The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views."). Ogawa appeals.

4

**Analysis**

"The Hague Convention was adopted to protect children from the adverse effects of being wrongfully removed to or retained in a foreign country and to establish procedures for their return." *de Silva v. Pitts*, 481 F.3d 1279, 1281 (10th Cir. 2007). "The Convention's central operating feature is the return remedy." *Abbott v. Abbott*, 560 U.S. 1, 9 (2010). The return remedy "provide[s] for a child's prompt return once it has been established the child has been 'wrongfully removed' to or retained in" a country that is party to the Convention. *de Silva*, 481 F.3d at 1281 (quoting *Ohlander v. Larson*, 114 F.3d 1531, 1534 (10th Cir. 1997)). "A petitioner . . . shall establish by a preponderance of the evidence . . . that the child has been wrongfully removed or retained within the meaning of the Convention." 22 U.S.C. § 9003(e)(1)(A); *accord Shealy v. Shealy*, 295 F.3d 1117, 1122 (10th Cir. 2002).

To make a prima facie showing of wrongful removal and thereby obtain access to the return remedy, a petitioner must establish that "(1) the child was habitually resident in a given state at the time of the removal or retention; (2) the removal or retention was in breach of petitioner's custody rights under the laws of that state; and (3) petitioner was exercising those rights at the time of removal or retention." *Shealy*, 295 F.3d at 1122. Here, only the second element is at issue. Under this element, the removal of a child is not wrongful merely because a parent objects; instead, a removal is wrongful only if done "in breach of rights of custody attributed to" the parent. Hague Convention, art. 3. Thus, to establish the second element, a petitioner must demonstrate by a preponderance of the evidence that he or she possesses rights

5

of custody as that term is defined in the Convention. *See* § 9003(e)(1)(A); *Abbott*, 560 U.S. at 5 (explaining that "[t]he question is whether a parent has" any rights of custody "by reason of" parent's rights in child's country of habitual residence).

The district court found that Ogawa failed to demonstrate that the twins' removal breached his rights of custody. In doing so, the district court examined the Divorce Agreement and concluded that after March 31, 2017, Kang had "full parental authority under Japanese law with the right to all decision-making authority for the children" and Ogawa had the right to "exercise[e] some physical custody[] at undetermined future dates." App. 125. Thus, it concluded, Kang's decision to remove the children did not violate Ogawa's rights of custody.

Ogawa challenges the district court's ruling on two grounds. First, he argues that it misinterpreted the Divorce Agreement and "struck a clear custody clause completely out of the Divorce Agreement." Aplt. Br. 17. In particular, he insists that the district court ignored the clause that stated, "however, [Ogawa] shall continue to maintain the right of custody." App. 46. He further argues that "it is the existence of custody rights—but not the substance of them—that [is] the only relevant inquiry for the court." Aplt. Br. 14. And because both Kang and the district court agreed that the Divorce Agreement gave Ogawa rights of some kind, he argues that he may invoke the return remedy even though Kang may have had "greater" rights after March 2017. Rep. Br. 8. Second, Ogawa argues the district court erred in finding that he had no rights of custody because the Japanese government, when it forwarded his application

6

for Hague Convention assistance to the United States, implicitly recognized that he has such rights under Japanese law.

In evaluating Ogawa's two arguments, we review de novo the district court's "conclusions regarding principles of domestic, foreign, and international law." *See Shealy*, 295 F.3d at 1121.

## I.      Rights of Custody

The Convention provides that rights of custody "include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Convention, art. 5. The kinds of rights that give rise to rights of custody may vary from country to country and from child to child depending on a variety of factors, including each country's domestic law, decisions by a country's courts about rights relating to a particular child, or any agreements made among parents or others about those rights. *See* Hague Convention, art. 3 (stating that rights of custody "may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of" country where child was "habitually resident" at time of removal).

Here, Ogawa and Kang agree that the twins were habitually resident in Japan at the time of their removal to the United States. Thus, to determine if Ogawa's rights are rights of custody, we first look to Japanese law "to determine the content of [his] right[s]." *Abbott*, 560 U.S. at 10. And because the parties agree that the Divorce Agreement governs their custody arrangement, we more specifically determine Ogawa's rights under the Divorce Agreement as interpreted under Japanese law. *See*

7

Hague Convention, art. 3 (providing that rights of custody "may arise . . . by reason of an agreement having legal effect under the law of" country); Minpō [Civ. C.] art. 766, para. 1 ("If parents divorce by agreement, the matters of who will have custody over a child . . . shall be determined by that agreement."). Then, we look to the "text and structure" of the Hague Convention—as opposed to dictionary definitions or "traditional notions of physical custody"—to determine whether Ogawa's rights under the Divorce Agreement and Japanese law constitute rights of custody under the Convention. *Abbott*, 560 U.S. at 10, 12 (explaining that this "approach ensures international consistency").

We begin with the terms of the Divorce Agreement. It provides that Kang "shall obtain parental authority over" the twins and Ogawa "shall obtain custody of" the twins. App. 45. That same section also instructs Ogawa to "hand over" the twins to Kang no later than March 31, 2017, but notes that he "shall continue to maintain the right of custody" after that date. *Id.* at 46. Another section requires Ogawa to begin paying child support to Kang in April 2017, after he "hand[s] over" the twins to Kang. *Id.* Finally, the Divorce Agreement allows either parent to visit the twins once a year, and it obligates Ogawa to purchase the plane tickets for those visits.

Ogawa argues—by relying on American legal principles of contract interpretation—that according to the "plain meaning" of the word "custody" in the Divorce Agreement, he "had custody rights under Japanese law." Aplt. Br. 19. But it is the Convention's definition of rights of custody and the content of Japanese law that guide us, not "our somewhat different American concepts of custody." *Furnes v.*

8

*Reeves*, 362 F.3d 702, 711 (11th Cir. 2004), *abrogated on other grounds by Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014); *see also Abbott*, 560 U.S. at 12 (explaining that Convention "forecloses courts from relying on definitions of custody confined by local law usage, definitions that may undermine recognition of custodial arrangements in other countries or in different legal traditions"). And Ogawa does not tell us what "content" the word "custody" in the Divorce Agreement has under Japanese law or how that might fit within the Convention's definition. *Abbott*, 560 U.S. at 10.

In contrast to Ogawa's undefined "custody" right, the Divorce Agreement specifically grants Kang "parental authority." App. 45. And Japanese law delineates which rights are included in "parental authority": for example, under Japanese law, a parent with "parental authority" over a child has authority to determine that child's "[r]esidence." Minpō [Civ. C.] art. 821. Thus, "parental authority" under Japanese law falls squarely within part of the Hague Convention's definition of rights of custody—a definition that specifically includes, "*in particular*, the right to determine the child's place of residence." Hague Convention, art. 5 (emphasis added). And the Divorce Agreement grants parental authority only to Kang; it nowhere states that Ogawa also has parental authority.

Yet Ogawa argues "that even minimal rights . . . are nevertheless 'rights of custody' under the Convention." Rep. Br. 7. In support, he relies on *Abbott*. There, the Supreme Court held that a father had rights of custody under the Convention even though the mother had sole custody and the father had visitation rights. *See Abbott*,

9

560 U.S. at 5–6. But critically, the father also had a *ne exeat* right—which, under the relevant country's domestic law, gave the father "the authority to consent before the other parent may take the child to another country." *Id.* at 5. Thus, the Supreme Court concluded in part that because the *ne exeat* right gave the father "the joint 'right to determine the child's place of residence,'" it met the definition of rights of custody under the Convention. *Id.* at 11 (quoting Hague Convention, art. 5). But here, the Divorce Agreement did *not* grant Ogawa a *ne exeat* right. That is, the Divorce Agreement does not provide that Ogawa has any authority to prevent Kang from taking the twins to a different country. *Cf. Abbott*, 560 U.S. at 6, 10 (holding that "*ne exeat* right is a right of custody under the Convention"). Thus, *Abbott* does not help Ogawa.

Of course, the authority to determine a child's place of residence is not the only type of right that meets the Convention definition for rights of custody. The Convention also provides that rights of custody include "rights relating to the care of the person of the child." Hague Convention, art. 5. To determine whether Ogawa had such rights, we turn again to the Divorce Agreement, which specifically provided *only* Kang with parental authority. And parental authority, under Japanese law, includes not only the authority to determine a child's place of residence, but also a broad collection of other rights including, among others, the rights to "care for and educate the child," Minpō [Civ. C.] art. 820, to discipline the child, *id.* at art. 822, to handle the child's money, and to take legal actions on behalf of the child, *id.* at art. 824. These rights "relat[e] to the care of the person of the child." *Cf. Altamiranda*

10

*Vale v. Avila*, 538 F.3d 581, 584, 586–87 (7th Cir. 2008) (holding that even though mother had physical custody of child, father had rights of custody because he had right to make decisions about child's care, education, and property).

Despite the Divorce Agreement's broad designation of rights to Kang, Ogawa maintains that the word "custody" in the Divorce Agreement carries with it some of these same rights. But Ogawa's briefing points to nothing in Japanese law to support his assertion that the use of the word "custody" carries with it any of the same "rights relating to the care of the person of the child" that accompany parental authority. Hague Convention, art. 5.

Relatedly, Ogawa argues that even if Kang's rights were "greater" than his, a child's removal is wrongful "whenever the left-behind parent had *any* custody right." Rep. Br. 8 (emphasis added). But for our purposes, the contours of the right or rights that the "left-behind" parent retains are critical: that parent must have some kind of right that meets the Convention's definition of rights of custody. Aplt. Br. 2. Thus, the question at hand is not whether Kang's rights were "greater" than Ogawa's, Rep. Br. 8; it is merely whether Ogawa's rights fall within the Convention's definition of rights of custody.

Indeed, simply because Ogawa had some rights to the twins does not automatically mean that the content of those rights amounts to rights of custody under the Convention. For instance, the Convention itself recognizes that not all of a parent's rights qualify as rights of custody: it also recognizes "rights of access." Hague Convention, art. 5 ("'[R]ights of access' shall include the right to take a child

11

for a limited period of time to a place other than the child's habitual residence."). While a parent with only rights of access cannot invoke the return remedy, *see Abbott*, 560 U.S. at 9, that parent may nevertheless use other Convention mechanisms to enforce rights of access, *see, e.g.*, Hague Convention, art. 21 (explaining that signatory countries must "promote the peaceful enjoyment of access rights" by "remov[ing], as far as possible, all obstacles to the exercise of such rights" and "may initiate or assist in . . . proceedings . . . to organiz[e] or protect[] these rights"). Thus, even if the Divorce Agreement gave Ogawa some rights, Ogawa must nevertheless demonstrate those rights are rights of custody as defined by the Convention. This he fails to do.[3]

In sum, Ogawa has not carried his burden to show, by a preponderance of the evidence, that he has rights of custody as the Convention defines them. *See*

---

[3] Although the parties have focused their arguments on rights of custody rather than rights of access, the content of Ogawa's rights after the handover may well amount to rights of access under the Convention. Under the Divorce Agreement's terms, Kang held the rights included in "parental authority" and Ogawa held the rights included in "custody." App. 45–46. The Divorce Agreement contemplated that no later than March 31, 2017, Ogawa would "hand over" the daily physical control of the twins to Kang and then begin paying child support. *Id.* at 46. After that handover, Ogawa would "continue to maintain the right of custody," but Kang would have daily physical control of the twins along with the broad collection of rights that Japanese law places in the parent with parental authority. *Id.*; *see* Minpō [Civ. C.] art. 820–22, 824 (giving examples of rights included in parental authority). The Divorce Agreement further provides that after the handover, Ogawa would have the right to visit the twins once per year and to communicate with the twins. In any event, we need not and do not decide the exact nature of the rights Ogawa does have because whatever those rights are, he has not shown that his rights after March 2017 are rights of custody "relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Convention, art. 3.

§ 9003(e)(1)(A); *Abbott*, 560 U.S. at 5. Indeed, instead of explaining what his rights are under the Divorce Agreement, Ogawa insists simply that because he has *some* rights—no matter what those rights actually are—their "nature and extent" is "irrelevant." Rep. Br. 3. But only by understanding the nature and extent of his rights under Japanese law can we evaluate whether the content of his rights is within the Convention's definition of rights of custody. *See Abbott*, 560 U.S. at 10. Ogawa offers little support for the argument that his rights are Convention rights of custody, and we find none.

## II.    Japanese Central Authority

Ogawa next argues that he must have some rights of custody because the Japanese Central Authority forwarded his application for Hague Convention assistance to the U.S. Central Authority. Under the terms of the Convention, each signatory country must "designate a Central Authority" to assist in a child's return. Hague Convention, art. 6.[4] One of the duties of a Central Authority is to transmit an application for a child's return to the country to which the child has been removed, provided that the Central Authority "has reason to believe that the child is in another" signatory country. Hague Convention, art. 9.

---

[4] The United States' Central Authority is the Department of State, *see* Exec. Order No. 12648, 53 Fed. Reg. 30637, 30637 (Aug. 11, 1988); Japan's Central Authority is the Minister for Foreign Affairs, *see* Act for Implementation of the Convention on the Civil Aspects of Int'l Child Abduction, Act No. 48 of 2013, art. 3, http://www.japaneselawtranslation.go.jp/law/detail/?id=2159&vm=02&re=02&new=1 (Japan) [hereinafter Implementation Act].

13

Yet Ogawa's argument stems not from the terms of the Convention itself, but from provisions of Japanese law that implement the Convention. In particular, Ogawa argues that Japanese law requires the Japanese Central Authority to dismiss applications under the Convention if "[i]t is obvious that the applicant does not have the rights of custody." Aplt. Br. 21 (quoting Implementation Act, art. 7, para. 1, no. 6). Thus, Ogawa reasons, when the Japanese Central Authority did not dismiss his application, it acknowledged that he had some rights of custody.

Ogawa overreads the Implementation Act and thus overstates the significance of the Japanese Central Authority's actions. The Implementation Act states that the Japanese Central Authority "shall dismiss an application for assistance" under the Convention if "[*i*]*t is obvious* that the applicant does not have the rights of custody." Implementation Act, art. 7, para. 1, no. 6 (emphasis added). But the Implementation Act *does not* state that by passing on the application, the Japanese Central Authority has determined as a matter of law that the applicant *does* have rights of custody. Further, and perhaps more importantly, it is Japanese law that governs whether Convention rights of custody exist, not a foreign administrative body's preliminary assessment of that law. *See Abbott*, 560 U.S. at 10, 12. We therefore reject Ogawa's argument that he has rights of custody under the Convention simply because the Japanese Central Authority transmitted his application to the United States.

## Conclusion

Because Ogawa fails to establish that his rights under the Divorce Agreement qualify as rights of custody under the Convention, Kang's removal of the twins to the

14

United States cannot be a breach of such rights of custody. We therefore affirm the judgment of the district court.



謄本

Notarized Document

公 正 証 書

Otaru Notary Office

小 樽 公 証 役 場

小樽市色内１丁目９番１号　松田ビル１Ｆ
電話・ＦＡＸ（0134）２２－４５３０番
郵便番号　０４７－００３１

Matsuda Building 1F, 1-9-1, Ironai, Otaru
TEL & FAX: +81-(0)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
Postal code: 047-0031



平成２５年第 号　Heisei 25 (2013) No. 42

養育費支払等契約公正証書 — Notarized Document for the Contract of Child Support Payments and So On

本公証人は，当事者の嘱託により，次の法律行為に関する陳述の趣旨を録取し，この証書を作成する。—

The undersigned notary prepared this notarial deed by request from the parties concerned to record a statement concerning the following jurisdic act.

法律行為の本旨　Purpose of the Jurisdic Act

夫・小川武司（以下「甲」という。）と妻・姜京仙（以下「乙」という。）とは，本日，甲乙間における協議離婚に関し，以下のとおり合意し，本契約を締結した。—

On this day, Takeshi OGAWA, the husband (hereinafter referred to as "Husband"), and Kyong Sun KANG, the wife (hereinafter referred to as "Wife"), agree as follows regarding mutual agreement divorce between Husband and Wife and have concluded this agreement.

第１条（離婚の合意）

甲と乙は協議離婚をすることに合意し，本公正証書作成後，離婚届に所定の記載をして各自署名押印するものとする。—

Article 1 (Agreement of Divorce)
Husband and Wife have agreed mutual agreement divorce. Upon completion of this deed, Husband and Wife shall complete, sign and place a seal on the divorce paper.

第２条（離婚の届出）

離婚届については，甲が，平成２５年３月３１日までに，小樽市役所に届け出るものとする。—

Article 2 (Notification of Divorce)
Husband shall submit the divorce paper to the Otaru City Office no later than March 31, 2013.

第３条（親権者等の定め）

甲乙間の未成年の長女・███ 及び二女・███（いずれも平成１８年███ ███ 以下両名を併せて「丙遠」という。）の親権者を乙，同時に監護者を甲と定める。

Article 3 (the person who has parental authority)
Wife shall obtain parental authority over the following minor children and Husband shall obtain custody of the following minor children of Husband and Wife
:The first daughter, ███ born on ███ 2006 and the second daughter, ███ born on ███, 2006 (hereinafter referred to collectively as "Children").

札幌法務局所属公証役場　Notary Office Affiliated with the Sapporo Legal Affairs Bureau



甲は丙達の福祉に配慮しながら監護権を行使するものとする。その上で、甲は監護権を留保しながら平成２９年３月末日に、丙達を乙に引き渡す。

Husband shall give due consideration to the welfare of Children when exercising custody.
Husband shall hand over Children to Wife on the last day of March 2017, however, Husband shall continue to maintain the right of custody of Children.

第４条（養育費等）

1　甲は乙に対し、監護権の帰属先にかかわらず丙達の養育費の実費弁済として、平成２９年４月より丙達が満２０歳を迎える日の属する月まで、各人について１か月金３万円ずつの支払義務があることを認め、毎月末日限り、乙の指定する口座に振込送金する方法により支払う。送金に要する費用（振込手数料等）は、甲が負担するものとする。

また、丙達の事故又は病気などの特別な費用については、甲乙が協議の上、別途甲が乙に対し、その必要費用を支払うものとする。

Article 4 (Child Support, etc.)
1. Regardless of which party is entitled to custody, Husband shall acknowledge that he is obliged to pay 30,000 yen/month for each child for a period beginning in April 2017 until the month when Children reach 20 years of age as child support to cover actual childcare expenses.
Such payment shall be made via transfer to the bank account designated by Wife no later than the end of each month.
Costs (bank transfer fees, etc.) required for such money transfers shall be paid by Husband.
Upon mutual agreement, Husband shall pay Wife costs incurred in the event Children are injured in an accident, fall ill or due to other special circumstances, in addition to monthly child support payments.

2　甲と乙は、相互に移転・転職・再婚その他、養育費の額の算定に関して影響を及ぼす虞のある重要事項が生じた場合には、遅滞なく相手方に通知することを約束するものとし、必要に応じて、別途協議できるものとする。

2. Husband and Wife shall promise to notify each other without delay of any important changes, such as relocation, job change, and/or remarriage, that may affect the calculation of the child support payment amount. The two parties may discuss this separately if necessary.

第５条（慰謝料）　Article 5 (Compensation)

札幌法務局所属公証役場　Notary Office Affiliated with the Sapporo Legal Affairs Bureau

Aplt. App. 46



甲及び乙は、慰謝料にかかる問題がすでに解決していることに合意するものとする。――

Husband and Wife agree that compensation issues have already been resolved.

第6条（財産分与）

甲及び乙は、財産分与にかかる問題がすでに解決していることに合意するものとする。――

Article 6 (Distribution of Property)
Husband and Wife agree that the distribution of property issues have already been resolved.

第7条（誓約事項）

甲と乙は、相互に、婚姻期間中の夫婦間しか知り得ない情報や、相手方の名誉や尊厳に関わる事項につき、第三者に口外・漏えいしないことを約束し、違反があった場合には、損害賠償請求の必要な裁判費用や弁護士費用、その他の必要な費用を、相手方に支払う。――

Article 7 (Covenant Clause)
Husband and Wife shall promise not to disclose any information only known to them as a couple over the course of their marriage, or any other information that could affect the other party's reputation or dignity to a third party.
If a party violates this clause, the party should pay court and attorney fees required to claim damages and other necessary costs to the other party.

第8条（面会交流権）

甲と乙は互いに、年1回（夏休み又は冬休み）、丙達と面接交渉をすることを容認する。その際、甲が経済的かつ合理的な航空券を購入して提供するものとする。また、電話や画像通話は甲、乙又は丙達が希望する時は深夜、早朝を除き、いつでも保障されるものとする。ただし、面接交渉の日時、場所、方法等の必要な事項は、丙達の福祉を害することが

Article 8 (Right of visitation or other contacts)
Husband and Wife mutually agree that either party can visit Children once a year (during summer or winter break). Husband shall purchase and provide economical and reasonable plane tickets for such visitations. Husband, Wife and Children shall be allowed to make phone calls and video calls whenever desired with the exception of late at night and early in the morning.
Visitation dates, hours, venues, methods and other necessary details shall be discussed and decided by Husband and Wife with due consideration given to the welfare of Children.

札幌法務局所属公証役場 Notary Office Affiliated with the Sapporo Legal Affairs Bureau

Aplt. App. 47



ないように，甲乙互いに配慮し協議決定する。——

第9条（専属的合意管轄条項）

　甲及び乙は，本契約に伴う一切の紛争について，

第一審の管轄裁判所を甲の住所地を管轄する裁判所

とすることに合意した。——

Article 9 (Exclusive Agreement Jurisdiction)
Husband and Wife agree that all disputes which may arise out of or
in connection with this agreement shall be settled by the district courts
located within the city in which Husband shall reside.

第10条（清算条項）

　甲と乙は，離婚に伴う財産上の問題に関し，本協

議書に定めるほか一切の債権債務がないことを確認

し，名目の如何を問わず，何らの請求を行わないこ

とを相互に確認する。——

Article 10 (Release and Discharge)
With respect to financial issues associated with divorce,
Husband and Wife shall mutually confirm that there are no obligations
or liabilities of any kind or in any way whatsoever except as otherwise provided herein.
Husband and Wife also shall confirm that neither party will make claims of any kind
or nature whatsoever against the other party.

（強制執行認諾）

第11条　甲は，本契約に定める金銭債務の支払義務

を怠ったときは，直ちに乙からの本契約公正証書正

本に基づく強制執行に服する旨陳述した。——

2　強制執行手続き，弁護士の雇用，裁判にかかる諸

費用（交通費，滞在費などを含む）をすべて，甲が乙に

支払うことにする。——

Article 11 (Approval of Compulsory Execution)
Husband has stated that if he fails to pay financial obligations provided herein.
he shall promptly follow the order of compulsory execution by Wife
in accordance with the original document of the notarized agreement.
2. Husband shall pay Wife all costs required for the compulsory execution procedure.
attorneys and a trial
(including transportation, accommodation and other miscellaneous fees).

本旨外の要件　Other Requirements

■■■■■■■■■■■■■■■■　■■■　■■■■■■■　Otaru City, Hokkaido

大学職員　University official

札幌法務局所属公証役場 Notary Office Affiliated with the Sapporo Legal Affairs Bureau

Aplt. App. 48



当事者夫（甲）　　　小 川 武 司 ——— Husband, as a party hereto: Takeshi OGAWA

昭和５０年 ███ ——— Born on ███ 1975

上記当事者夫（甲）は，運転免許証の提示により，人違いでない ——— The identity of the aforementioned party (Husband) was verified by having him present his driver's license.

ことを証明させた。

無　職　Unemployed

当事者妻（乙）　　　姜 京 仙 ——— Wife, as a party hereto: Kyong Sun KANG

昭和５２年 ███ ——— Born on ███ 1977

会社員　Company employee

上記代理人　　　　本 田 雅 子 ——— Agent of the aforementioned party: Masako HONDA

昭和４１年 ███ ——— Born on ███

上記代理人は，印鑑登録証明書の提出により，人違いでないこと ——— The identity of the aforementioned agent was verified by having her present her seal registration certificate.

を証明させた。

代理人の提出した委任状には，認証がないので，本 ——— As the letter of proxy that the agent submitted was not certified, the authenticity of the letter of proxy was proven based on a certificate of the signature of the wife.

人の署名証明書によりその真正を証明させた。

上記のとおり関係人に読み聞かせ，かつ，閲覧させ

たところ，各自これを承認し，次に署名押印する。

小 川 武 司 ——— Takeshi OGAWA (Seal)

札幌法務局所属公証役場 Notary Office Affiliated with the Sapporo Legal Affairs Bureau

Aplt. App. 49



李田 雅子 ㊞　　　　　　　Masako HONDA (Seal)

この証書は，平成２５年３月１９日，小樽公証役場　　This deed was created as required by law at Otaru Notary Office
　　　　　　　　　　　　　　　　　　　　　　　　on March 19, 2013. The notary public shall sign and place a seal below:
において法律の規定に従って作成し，本公証人次に署

名押印する。

▮▮▮▮▮▮▮▮▮▮　　　　　　　　　　　　▮▮▮▮▮▮▮▮ Otaru City, Hokkaido

札幌法務局所属　　　　　　　　　　　　　Notary Affiliated with the Sapporo Legal Affairs Bureau
　　　　　　　　　　　　　　　　　　　　　:Takashi MIKAMI (Seal)
公証人　　みかみ隆司㊞

当事者夫（甲）小川武司及び同妻（乙）姜　京仙双　An authenticated copy of this agreement
　　　　　　　　　　　　　　　　　　　　shall be provided to Takeshi OGAWA, Husband, as a party hereto,
方のために，正本各１通を付与する。　　　as well as to Kyung Sung KANG, Wife, as a party hereto.

平成２５年３月１９日 March 19, 2013

▮▮▮▮▮▮▮▮▮▮▮▮▮▮　　　　　　　　　　▮▮▮▮▮▮▮ Otaru City, Hokkaido

　　　小樽公証役場において　　　　　　　At Otaru Notary Office

札幌法務局所属　　　　　　　　　　　　　Notary Affiliated with the Sapporo Legal Affairs Bureau
　　　　　　　　　　　　　　　　　　　　　:Takashi MIKAMI (Seal)
公証人　　みかみ隆司

札幌法務局所属公証役場　Notary Office Affiliated with the Sapporo Legal Affairs Bureau



上記は謄本である。 ——————————— I hereby certify that this is a transcript of the original agreement.

平成２８年５月２０日 May 20, 2016

████████ ██ █ ——————————— ████████ Otaru City, Hokkaido

小樽公証役場において ——————————— At Otaru Notary Office

札幌法務局所属

公証人　三上隆司 ——————————— Notary Affiliated with the Sapporo Legal Affairs Bureau
:Takashi MIKAMI  (Seal)

札幌法務局所属公証役場 Notary Office Affiliated with the Sapporo Legal Affairs Bureau