The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 4, 2024

**2024COA2**

**No. 22CA1867, *Marriage of Gonzalez Morales* — Family Law — Uniform Child-custody Jurisdiction Enforcement Act — Warrant to Take Physical Custody of Child — Convention on the Civil Aspects of Child Abduction — *Patria Potestas***

This case requires a division of the court of appeals to address, for the first time in Colorado, the doctrine of *patria potestas* and its impact on a parent's ability to seek the return of a child to their habitual place of residence if the child was wrongly removed and transported to another country. In addressing this issue, the division sets forth the proper framework for determining whether a parent has sufficient custodial rights to invoke the protections of the Hague Convention on the Civil Aspects of International Child Abduction. As relevant to the present dispute, because the parties' divorce decree did not eliminate father's *patria potestas* rights, the division concludes that he retained sufficient rights of custody to

pursue an order in this jurisdiction — where the child is currently present — for the return of his daughter to Mexico. Because the trial court reached a contrary conclusion, the division reverses and remands the case for further proceedings.

Court of Appeals No. 22CA1867
Garfield County District Court No. 21DR30071
Honorable Denise K. Lynch, Judge

In re the Marriage of

Juan Antonio Gonzalez Morales,

Appellant,

and

Abril Dubbe Meixueiro,

Appellee.

ORDER REVERSED AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE SCHUTZ
J. Jones and Johnson, JJ., concur

Announced January 4, 2024

The Harris Law Firm PLLP, Richard A. Harris, Katherine O. Ellis, Kady L. Tran, Denver, Colorado, for Appellant

Defiance Law Firm, Peter A. Rachesky, Glenwood Springs, Colorado, for Appellee

¶ 1     Juan Antonio Gonzalez Morales (father) appeals the district court's order granting the C.R.C.P. 41(b) motion of Abril Dubbe Meixueiro (mother) seeking the dismissal of a proceeding initiated by father under the provisions of the Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670 (Hague Abduction Convention), and its implementing statutes, 22 U.S.C. §§ 9001-9011.

¶ 2     The parties' dispute requires us to address, for the first time in Colorado, the doctrine of *patria potestas* and its impact on a parent's ability to seek the return of a child to their habitual place of residence if the child was wrongly removed and transported to another country.

¶ 3     In addressing this issue, we set forth the proper framework for determining whether a parent has sufficient custodial rights to invoke the protections of the Hague Abduction Convention.  As relevant to the present dispute, because the parties' divorce decree did not eliminate father's *patria potestas* rights, we conclude that he retained sufficient rights of custody to pursue an order in this jurisdiction — where the child is currently present — for the return of his daughter to Mexico.  Because the district court reached a

1

contrary conclusion, we reverse and remand the case for further proceedings.

## I. Background

¶ 4 The parties were married in Texas in 2014 and have one daughter, who was born in 2015. Shortly after the child's birth, the parties relocated to Mexico, where they settled in the city and state of Chihuahua. Father filed for divorce in September 2019. In November 2020, the Family Court of the Morelos Judicial District, Chihuahua, Mexico, entered a decree dissolving the marriage.

¶ 5 The decree memorialized the parties' agreement regarding their child. As relevant here, the decree provided that mother would have custody of the child with father having regular parenting time. Father's parenting time included every other weekend, two hours each Wednesday evening, half of the child's summer break, and shared holidays. In early 2021, father went to mother's home in Chihuahua for his scheduled parenting time and discovered that mother and the child were missing.

¶ 6 Shortly thereafter, believing that mother had left the country with the child, father applied to the Mexican authorities for the return of the child under the Hague Abduction Convention. In

June 2021, after learning that the child was in Colorado, father filed in the district court of Garfield County a petition for the registration and expedited enforcement of a child-custody determination pursuant to the Uniform Child-custody Jurisdiction and Enforcement Act. *See* §§ 14-13-101 to -403, C.R.S. 2023. Father also sought and obtained a warrant under section 14-13-311, C.R.S. 2023, and the Hague Abduction Convention to take immediate custody of the child and return her to Mexico.

¶ 7　　In October 2022, after a year of trying to locate mother and the child, father served mother with the district court pleadings and the warrant. The district court promptly set a hearing on father's request to return the child to Mexico pursuant to the Hague Abduction Convention.

¶ 8　　At the hearing, the parties presented competing Spanish to English translations of the decree.[1] After father presented his case, mother moved for a directed verdict in her favor under C.R.C.P. 50, contending that father had not proved that he possessed rights of

---

[1] Although there are linguistic variations between the two translations, the parties do not point to any substantive differences.

custody sufficient to entitle him to relief under the Hague Abduction Convention. The court deferred ruling on the issue and instead allowed mother to begin presenting her case opposing the return of the child. The district court then set the case for an additional day of testimony but also ordered the parties to submit written briefs on mother's motion for a directed verdict in the interim.

¶ 9 After reviewing the briefs, the court construed mother's motion for a directed verdict as a motion for entry of judgment under C.R.C.P. 41(b)(1). The court resolved the motion in mother's favor, concluding that, under the decree and Mexican law, father did not have rights of custody that entitled him to seek the return of the child under the Hague Abduction Convention.

II.     Standards of Review Under C.R.C.P. 41(b)(1)

¶ 10 C.R.C.P. 41(b)(1) provides that, when an action is tried by the court without a jury, after the moving party's presentation of evidence, "the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." When ruling on a motion pursuant to C.R.C.P. 41(b)(1), the district court "must determine whether judgment in

4

favor of defendant is justified on the evidence presented." *Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 25 (Colo. App. 2010) (quoting *DSCO, Inc. v. Warren*, 829 P.2d 438, 441 (Colo. App. 1991)). C.R.C.P. 41(b)(1) states that, when a court grants such a motion, it must "make findings as provided in Rule 52." *See* C.R.C.P. 52 (titled "Findings by the Court").

¶ 11 Our review of a judgment or order entered following a trial to the court presents a mixed question of fact and law. *State Farm Mut. Auto. Ins. Co. v. Johnson*, 2017 CO 68, ¶ 12. "We apply a bifurcated standard to such questions, reviewing the evidentiary factual findings for an abuse of discretion and the legal conclusions de novo." *Id.* Therefore, in reviewing the grant of a C.R.C.P. 41(b)(1) motion, we defer to the district court's factual findings "[i]f reasonable minds could differ over the inferences and conclusions to be drawn from the evidence at the conclusion of a plaintiff's case." *Colo. Coffee Bean*, 251 P.3d at 25.

### III. The Hague Abduction Convention

¶ 12 The purpose of the Hague Abduction Convention is to promptly return children who are wrongfully removed from their place of habitual residence, unless one of the narrow exceptions to

return applies. *See* 22 U.S.C. § 9001(a)(4); *In re Marriage of Jeffers*, 992 P.2d 686, 690 (Colo. App. 1999). "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, 20 (2010). Thus, the Hague Abduction Convention should not be interpreted to permit a parent to select the country to adjudicate parental responsibilities by crossing a border. *See id.* at 21; *see also March v. Levine*, 249 F.3d 462, 472 (6th Cir. 2001) ("The . . . Convention . . . [was] specifically designed to discourage those who would remove or retain children in the hopes of seeking a 'home court advantage' . . . .").

¶ 13    Under the Convention, the removal of a child is wrongful if

> a. it is in breach of rights of custody attributed to a person, . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b. at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Abduction Convention art. 3. If the petitioner establishes these elements, the court "shall order the return of the child forthwith," *id.* at art. 12, unless the responding party can establish one of the exceptions under Articles 12, 13 or 20. 22 U.S.C. § 9003(e)(2).

¶ 14     "No wrongful removal exists without the possession of custodial rights by the parent seeking the child's return." *Lieberman v. Tabachnik*, 625 F. Supp. 2d 1109, 1116 (D. Colo. 2008). "[R]ights of custody" are defined to "include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Abduction Convention art. 5(a). However, rights of custody are distinct from "rights of access," which "include the right to take a child for a limited period of time to a place other than the child's habitual residence." *Id.* at art. 5(b). A petitioning party that only has rights of access does not have a specific remedy for the return of a child under the Hague Abduction Convention. *Lieberman*, 625 F. Supp. 2d at 1116-17.

¶ 15     In determining whether a parent has rights of custody, courts look to the law of the child's habitual residence. Hague Abduction

Convention art. 3(a); *Abbott*, 560 U.S. at 10 ("This Court consults Chilean law to determine the content of [father's] right, while following the Convention's text and structure to decide whether the right at issue is a 'righ[t] of custody.'"). Rights of custody sufficient to allow a petitioner to seek the removal of a child under the Hague Abduction Convention are quite broad. *See Palencia v. Perez*, 921 F.3d 1333, 1339 (11th Cir. 2019) ("The Convention's intent is for courts to 'invoke[] in the widest possible sense' the law of the child's habitual residence." (quoting Elisa Pérez-Vera, Hague Conf. on Priv. Int'l L., *Explanatory Report on the 1980 Hague Convention on the Civil Aspects of International Child Abduction* ¶ 67 (1982)).

> [T]he violation of a *single* custody right suffices to make removal of a child wrongful. That is, a parent need not have "custody" of the child to be entitled to return of his child under the Convention; rather, he need only have one right of custody. Further, he need not have a *sole* or even *primary* right of custody.

*Furnes v. Reeves*, 362 F.3d 702, 714-15 (11th Cir. 2004), *abrogated on other grounds by Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014); *see also Palencia*, 921 F.3d at 1338 ("The term 'rights of custody' does not have a fixed definition, but it is not limited to physical custody.").

## IV.    Discussion

¶ 16    Father contends that the district court wrongfully granted mother's C.R.C.P. 41(b)(1) motion and denied his petition for the return of the child because the court erroneously concluded that the decree did not provide him with any "rights of custody" as defined by the Hague Abduction Convention.  Specifically, father argues that the district court erred by relying on *Ibarra v. Quintanilla Garcia*, 476 F. Supp. 2d 630 (S.D. Tex. 2007), to hold that the decree's award of custody to mother eliminated all rights of custody that father had under Mexican law, including rights under the Mexican doctrine of *patria potestas*.  We turn now to the substance of father's contention.

¶ 17    Parental rights in Mexico encompass more than one right of custody.  One of those rights is *patria potestas*, which "has its roots in Roman law," under which the doctrine "conveyed absolute and despotic rights of a father over his children."  *Saldivar v. Rodela*, 879 F. Supp. 2d 610, 623 (W.D. Tex. 2012).  The doctrine has been significantly modified over time, and today *patria potestas* refers to the reciprocal authority of mother and father (and sometimes grandparents) to exercise parental authority that encompasses "the

9

comprehensive physical, mental, moral[,] and social protection of the minor child." *Whallon v. Lynn*, 230 F.3d 450, 457 (1st Cir. 2000); *see Saldivar*, 879 F. Supp. 2d at 624 ("*[P]atria potesta[s]* constitutes the 'most comprehensive' right that a parent can exercise over the person and property of his or her minor children." (quoting Stephen Zamora et al., *Mexican Law* 482 (2004))).

¶ 18    "In other words, *patria potestas* establishes the parent's bundle of rights over a minor child, one of which is formal custody, but it also includes the right to care for the child and make decisions about his or her life." *Gonzalez v. Preston*, 107 F. Supp. 3d 1226, 1234 (M.D. Ala. 2015); *cf. Whallon*, 230 F.3d at 458 ("[P]atria potestas, like physical custody, plainly means something 'independent' from mere visitation rights.").

¶ 19    The doctrine of *patria potestas* is codified in the Civil Code of Chihuahua, which, according to the translation furnished to the district court, provides that "[p]arental authority is exercised over the person and property of the children" and that "[m]inor children not emancipated, are under parental authority as long as there is one of the ancestors who must exercise it according to law." Código Civil del Estado de Chihuahua, arts. 389, 390 (hereinafter Chih.

10

Civ. Code);[2] *see also Saldivar*, 879 F. Supp. 2d at 624 (articles 388 to 402 of the Chihuahua Civil Code recognize *patria potestad*[3] as "a bundle of correlative rights over a minor child" that are "equally shared by the mother and the father"); *Gonzalez*, 107 F. Supp. 3d at 1234.

¶ 20     Mother does not dispute that the rights encompassed by *patria potestas* are sufficient rights of custody to allow a party to prosecute an action for the return of a child under the Hague Abduction Convention.  *See Whallon*, 230 F.3d at 459 (holding that *patria potestas* rights under Mexican law constituted rights of custody under the Convention); *Lieberman*, 625 F. Supp. 2d at 1124 (concluding that "*patria potestas* rights are not mere access

---

[2] The Chihuahua Civil Code was not introduced as an exhibit at the hearing, but father provided a translated version of the relevant portions as an attachment to his legal brief submitted in response to mother's motion for a directed verdict.  The district court quoted father's translation in its order.  Mother does not appear to object to father's inclusion of or reliance on the translated code, and both parties reference the code provided by father in their appellate briefs.

[3] Though commonly referred to as *patria potestas*, the doctrine is also sometimes referred to as *patria potestad*.

rights to the minor children" but also include the rights of custody under the Convention).

¶ 21 Instead, citing article 393 of the Chihuahua Civil Code, which provides that, "[i]n case of separation of those who exercise parental authority, they may agree to the terms of their exercise," mother contends that the parties' custody agreement, as incorporated into the decree, supersedes father's *patria potestas* rights. *See* Chih. Civ. Code, art. 393. We disagree because nothing in the decree specifically provides that father surrendered his *patria potestas* rights.

¶ 22 Like the district court, we conclude that the minor differences in the parties' translations of the decree do not impact our analysis. Using father's translation, the fourth clause of the decree gave "definitive custody" to mother; whereas under mother's translation, she received "full care and custody." Either way, the decree placed the child in the care of mother, with father receiving regular visits under the fifth clause. *See* Patricia Begné, *Parental Authority and Child Custody in Mexico,* 39 Fam. L.Q. 527, 534 (2005) ("Consequently, although Mexican law refers to care and custody

12

(*cuidado y custodia*), it suffices to use the term custody on its own, which means to 'look after with care.'").

¶ 23     Mother is correct that a custody agreement, in some circumstances, may override the doctrine of *patria potestas*.  *See Altamiranda Vale v. Avila*, 538 F.3d 581, 587 (7th Cir. 2008) ("*[P]atria potestas* is a default doctrine and hence does not override rights conferred by a valid custody agreement between the parents."); *Gonzalez*, 107 F. Supp. 3d at 1234 ("In the case of parental separation, the civil code provides that *patria potestas* rights and obligations continue, though parents mutually may alter these terms by agreement.").  But while the decree provides that mother has primary physical custody of the child, it is silent as to the parties' exercise of parental authority or *patria potestas* over the child, including the right to make decisions for the child and to provide the "physical, mental, moral[,] and social protection" of the child.  *Whallon*, 230 F.3d at 457; *Gonzalez*, 107 F. Supp. 3d at 1234.

¶ 24     The decree's silence leaves us to resolve the difficult question of whether, as mother contends, the decree extinguished father's *patria potestas* rights.  In many cases involving foreign divorce

decrees or custody agreements, the unambiguous text of the decree or agreement provides the reviewing court with a clear answer. *See Lieberman*, 625 F. Supp. 2d at 1117 (where the parties' agreement in the decree provided that "[b]oth parties shall have the paternal authority of their minor children," father maintained *patria potestas* rights even though mother had custody of the children); *Gatica v. Martinez*, No. 10-21750-CIV, 2010 WL 6744790, at *2-3 (S.D. Fla. Oct. 13, 2010) (unpublished report and recommendation) (decree did not extinguish father's *patria potestas* rights despite mother having custody because the decree provided that "[b]oth parties agree to retain parental authority"), *adopted*, 2011 WL 2110291 (S.D. Fla. May 25, 2011) (unpublished order); *cf. Takeshi Ogawa v. Kyong Kang*, 946 F.3d 1176, 1178, 1180 (10th Cir. 2020) (father lacked rights of custody because the decree explicitly awarded only mother parental authority, which, under Japanese law, included the right to determine the child's place of residence).

¶ 25 Here, the decree's silence on the issue of and the existence of default *patria potestas* rights under the law of Chihuahua leads us to conclude that father did not surrender such rights. Therefore, we hold that father maintained rights of custody sufficient to

pursue an action for the return of the child under the Hague Abduction Convention.

¶ 26    Our decision is informed by *Garcia v. Pinelo,* 125 F. Supp. 3d 794, 799 (N.D. Ill.), *aff'd,* 808 F.3d 1158 (7th Cir. 2015). In *Garcia,* as in this case, the parties' custody agreement, which was adopted as an order of the Mexican court, did not expressly address *patria potestas* or parental authority. *See id.* at 806. And, as here, the agreement in *Garcia* awarded the mother custody and established a fixed parenting time schedule for the father. *Id.* Likewise, when the father in *Garcia* petitioned in a United States court for the return of the child under the Hague Abduction Convention, the mother asserted that he lacked sufficient rights of custody because the agreement and resulting custody order extinguished his *patria potestas* rights. *Id.* at 805.

¶ 27    In rejecting the mother's contentions, the court in *Garcia* examined the civil code of the state of Nuevo León, Mexico, which — like Chihuahua's civil code — affords both parents *patria potestas* rights by default. *See id.*; Chih. Civ. Code, art. 394. The *Garcia* court acknowledged that *patria potestas* rights may be superseded by rights delineated in a valid custody agreement. *See* 125 F. Supp.

15

3d at 805 (citing *Altamiranda,* 538 F.3d at 587). But *Garcia* reasoned that the father retained his *patria potestas* rights because the custody agreement was silent on the issue, nothing in the Nuevo León civil code provided that *patria potestas* rights were automatically terminated in a custody agreement, and the Mexican court that adopted the parties' custody agreement did not explicitly reject father's *patria potestas* rights. *Id.* at 807.

¶ 28 As in *Garcia,* we look to the local civil code, which provides that "[o]nly by court order may [a parent] . . . lose the right to coexistence . . . as well as in cases of suspension or loss of parental authority." Chih. Civ. Code, art. 394. As previously noted, there is no express or implied provision in the decree that suspends father's parental authority. Mother argues that article 393 of the Chihuahua Civil Code allowed the parties to agree on the terms of their custody arrangement in the decree. *See* Chih. Civ. Code, art. 393. That is true, as far as it goes. But nothing in the decree suggests that the parties, in fact, reached an agreement contrary to the default position that father retains *patria potestas* rights.

¶ 29 Mother tries to distinguish *Garcia* based on that court's finding that the parties had "no settled mutual intent" for the child

16

to leave Mexico.  *See Garcia*, 125 F. Supp. 3d at 802.  But mother has failed to explain how this finding was relevant to *Garcia*'s holding that the father maintained his *patria potestas* rights, or how it is relevant to the present dispute.

¶ 30     Mother also directs our attention to *Gonzalez v. Gutierrez*, 311 F.3d 942 (9th Cir. 2002), *abrogated by Abbott*, 560 U.S. 1.  But all that case holds (besides the since-overruled holding that the doctrine of *ne exeat*[4] does not by itself create a right of custody, *see Abbott*, 560 U.S. at 10) is that *patria potestas* is a default doctrine and hence does not override those rights actually addressed by a valid custody agreement between the parents.  *Gonzalez*, 311 F.3d at 954.  Indeed, *Gonzalez* is supportive of father's position because, as we mentioned previously, we must defer to the Chihuahua Civil Code because the parties' decree failed to address *patria potestas*. *Gonzalez* did not need to reach the issue we do because the doctrine of *patria potestas* cannot supplant the express provisions

---

[4] *Ne exeat* refers to an "equitable writ restraining a person from leaving, or removing a child or property from, the jurisdiction." *Lieberman v. Tabachnik*, 625 F. Supp. 2d 1109, 1120 (D. Colo. 2008) (quoting Black's Law Dictionary 1060 (8th ed. 2004)).

of a custody agreement. *See id.*; *see also* Hague Abduction Convention art. 3(a) (requiring courts to look to the law of the child's habitual residence). Thus, we do not find *Gonzalez* to be instructive.

¶ 31  We likewise reject mother's and the district court's reliance on *Ibarra*, 476 F. Supp. 2d at 633-34. In *Ibarra*, even though the decree at issue expressly preserved the father's "parental authority" over the child, the court concluded that his *patria potestas* rights had been extinguished. *Id.* In reaching this conclusion, the court leaned heavily on the testimony of the father, who was a Mexican attorney, that the "right of custody that I had with the minor, I left that to the mother." *Id.* at 635. Father made no similar concession.

¶ 32  To the extent that mother suggests that the district court did not err because the decree extinguished father's rights of custody by allowing her to remove the child from the country, we disagree. Nothing in the text of the decree allows mother to permanently relocate from Mexico, and the sixth clause of the decree, cited by mother, only references "temporary travel" and requires the travelling party to provide "dates for the planned travel to the other parent."

¶ 33    Moreover, the sixth clause grants both parents the right of temporary travel with the child — including trips out of the country — on one week's prior notice to the other.  In addition, the decree required the parents to surrender the child's passport to the court for a period of six months.  These reciprocal grants of travel rights, together with the associated notice requirements and the temporary surrender of the child's passport, are inconsistent with mother's claim that she possessed the unfettered right to permanently move the child to another country two months after the dissolution of marriage became final.

¶ 34    Moreover, other cases interpreting the civil code of Chihuahua have concluded that, within the codified doctrine of *patria potestas* is a right to determine a child's place of residence.  *See Saldivar*, 879 F. Supp. 2d at 625 (quoting article 398 of the Chihuahua Civil Code, which provides that "[t]he abduction or retention of the minor away from his habitual residence, without the permission of those who are exercising *patria potesta[s]* or [who] have custody, will give rise to the right of procedure of restitution established in the Code of Civil Procedure," and discussing how this provision was specifically amended in response to Mexico's adoption of the Hague

19

Abduction Convention); *Gonzalez*, 107 F. Supp. 3d at 1234 ("*Patria potestas* also confers the right to live with the child and determine the child's location.").

¶ 35    In sum, we conclude that because father had sufficient rights of custody under the doctrine of *patria potestas* to maintain a wrongful removal action under the Hague Abduction Convention, the district court erred by granting mother's C.R.C.P. 41(b) motion. We accordingly reverse the district court's order granting that motion and remand the case for further proceedings consistent with C.R.C.P. 41(b)(1), which provides that a denial of a motion under that rule does not constitute a waiver of a defendant's "right to offer evidence in the event the motion is not granted."

V.    Wrongful Retention Under the Hague Abduction Convention

¶ 36    Because we conclude that the district court erred by holding that father did not have sufficient rights of custody to maintain a wrongful removal proceeding under the Hague Abduction Convention, we decline to address father's alternative contention that the district court failed to consider the wrongful retention of the child under the Convention.

## VI.     Disposition

¶ 37     The district court's order is reversed, and the case is remanded for further proceedings, including the completion of mother's presentation of her case in opposition to father's request to return the child to Mexico, and issuance of an order that includes conclusions of law consistent with this opinion.

JUDGE J. JONES and JUDGE JOHNSON concur.