2017 CO 68

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Petitioner,

v.

**Brian K. JOHNSON, Respondent.**

**Supreme Court Case No. 14SC890**

Supreme Court of Colorado.

June 5, 2017

Attorneys for Petitioner: Patterson & Salg, P.C., Franklin D. Patterson, Brian D. Kennedy, Greenwood Village, Colorado, Hall & Evans, LLC, Alan Epstein, Denver, Colorado

Attorneys for Respondent: The Kofoed Law Firm, LLC, David L. Kofoed, Centennial, Colorado

Attorneys for Amicus Curiae The Colorado Trial Lawyers Association: Taussig & Taussig, P.C., John G. Taussig, III, Boulder, Colorado

Attorneys for Amici Curiae Property Casualty Insurers Association of America and the National Association of Mutual Insurance Companies: Ruebel & Quillen, LLC, Casey A. Quillen, Jeffrey C. Ruebel, Westminster, Colorado

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1 Consistent with his prior practices, the respondent, Brian K. Johnson, tasked a friend with purchasing automobile insurance for the new car that he and the friend had purchased together. The friend did so, and in the course of that transaction, she chose to reject uninsured/underinsured motorist (UM/UIM) coverage on the new car. After an accident in that car with an underinsured motorist, Johnson contended that his friend's rejection of UM/UIM coverage was not binding on him. A division of the court of appeals ultimately agreed with him, see Johnson v. State Farm Mut. Auto. Ins. Co., 2014 COA 135, 399 P.3d 709, and this case now presents two questions for our consideration. First, does the UM/UIM statute, section 10-4-609, C.R.S. (2016), require each named insured to reject such coverage, or is one named insured's rejection binding on all? And second, did the legislature, by enacting section 10-4-609, abrogate the common law agency principles of implied authority and apparent authority?[1]

¶2 We start with the second issue presented and conclude that nothing in the language of section 10-4-609 precludes an agent from exercising either apparent or implied author-

---

1. Specifically, we granted certiorari to review the following issues:
   1. Whether the court of appeals erred in holding that Colorado's uninsured/underinsured motorist ("UM/UIM") statute, section 10-4-609, C.R.S. (2016), precludes a single named insured from waiving UM/UIM coverage for any other named insured and instead requires that each named insured must expressly waive coverage.

2. Whether the court of appeals erred in holding that Colorado's UM/UIM statute abrogated the common law agency principles of apparent and implied authority by requiring that an agent have express actual authority to waive UM/UIM coverage on behalf of the principal.

ity to reject UM/UIM coverage on behalf of a principal. Turning to the facts of this case, we conclude that the record amply demonstrates that Johnson delegated to his friend the task of purchasing insurance for their jointly owned car and that, in undertaking this task, the friend had implied authority to reject, and did in fact reject, UM/UIM coverage on Johnson's behalf. Based on this conclusion, we reverse the division's judgment and need not reach the first question presented.

## I.  Facts and Procedural History

¶3 Johnson was living with his friend when the two decided to buy a car together. Although Johnson was to be the primary driver, the car was purchased, financed, and titled in both his and the friend's names. The financing was primarily based on the friend's good credit.

¶4 For about six months, an insurance policy owned by Johnson and his estranged wife covered the new car. After that policy lapsed, Johnson sought a new policy on his own but found the options to be more expensive than his lapsed policy. His friend then suggested that she insure the car through the petitioner, State Farm Mutual Automobile Insurance Company, from whom she had purchased insurance for her primary car and with whom she had had a long and good business relationship. Consistent with his prior practice of deferring insurance matters to his estranged wife, Johnson agreed to defer to his friend concerning the present insurance matter.

¶5 Johnson's friend then contacted State Farm and explained that she wanted the same coverage on the new car as she had on her primary car. A State Farm employee responded that the friend's current policy included $100,000 in UM/UIM coverage, which extended to everyone who lived in her household (including, at the time, Johnson), regardless of which car he or she was driving. The employee thus explained that the friend could add UM/UIM coverage for the new car, which would result in double coverage in the amount of $200,000, but that the friend would have to pay a separate premium for the additional coverage. The friend ulti-

mately signed a form rejecting UM/UIM coverage on the new car and received from State Farm a policy that did not include such coverage.

¶6 Approximately one month later, Johnson was driving the new car when he was hit by an underinsured driver and sustained serious injuries. Johnson was not at fault, and he made a demand on State Farm for the $100,000 in UM/UIM benefits. For reasons that are unclear from the record before us, State Farm denied this claim. Johnson subsequently sued State Farm, among others, and sought the additional UM/UIM benefits.

¶7 State Farm moved for summary judgment, arguing that Johnson's friend was authorized to reject—and did, in fact, reject—UM/UIM coverage on the new car. In ruling on this motion, the district court considered whether, pursuant to section 10-4-609, Johnson's friend could reject such coverage on behalf of both of them or whether, as Johnson contended, the statute required each named insured (i.e., both Johnson and his friend) to reject such coverage.

¶8 The court began with the language of section 10-4-609, noting that "[t]he statute specifically says 'the named insured may reject such coverage in writing'" but that "it does not state that the named insured must reject such coverage personally." The court then applied agency principles, reasoning that an agent of the named insured may enter into an insurance contract on behalf of the named insured—the "very thing [that] happened in this case." And because Johnson had not argued that his friend was prohibited from rejecting UM/UIM coverage or that she had exceeded her authority in doing so, the court concluded that the friend's waiver of UM/UIM coverage was binding on Johnson. The court determined, however, that genuine issues of material fact remained regarding whether State Farm had properly offered UM/UIM coverage to Johnson's friend and whether she had actually waived such coverage. It therefore denied State Farm's summary judgment motion.

¶9 State Farm then moved to bifurcate the issues of coverage and damages. The court granted this motion and, three months later,

held a bench trial on the issue of whether UM/UIM coverage was available to Johnson. After the trial, the court issued detailed, written findings of fact and an order of judgment in which it concluded that State Farm had, in accordance with its statutory obligations, offered UM/UIM coverage to Johnson's friend, explained that she already had $100,000 of UM/UIM coverage through the policy on her primary car, and obtained her written rejection of additional coverage. Applying its earlier ruling, the court concluded that this rejection was effective as to both Johnson and his friend, and therefore, no additional UM/UIM coverage was available on the new car. Accordingly, the court entered judgment in State Farm's favor.

¶10 Johnson appealed, arguing, as pertinent here, that the district court had erred in ruling that one named insured could reject UM/UIM coverage for another named insured. A division of the court of appeals agreed. In a unanimous, published opinion, it concluded that (1) the phrase "the named insured" in section 10-4-609 means all persons whom the policy lists as "the named insured" and (2) an agent of the named insured may reject UM/UIM coverage for that named insured only if the agent acts with express actual authority from him or her. Johnson, ¶¶ 38, 67. Applying the foregoing principles to the facts before it, the division reversed the trial court's judgment in State Farm's favor and remanded the case to the district court with instructions (1) to enter judgment in Johnson's favor on the issue of coverage, (2) to read UM/UIM coverage into his policy in an amount equal to the bodily injury liability limits of the policy, and (3) to conduct a trial on the issue of damages. Id. at ¶ 86.

¶11 State Farm then petitioned this court for, and we granted, certiorari.

## II. Standard of Review

■ ¶12 When a court enters a judgment following a bench trial, that judgment presents a mixed question of law and fact. Jehly

v. Brown, 2014 COA 39, ¶ 8, 327 P.3d 351, 353; see also Mt. Emmons Mining Co. v. Town of Crested Butte, 690 P.2d 231, 239 (Colo. 1984) ("A mixed question of law and fact involves the application of a legal standard to a particular set of evidentiary facts in resolving a legal issue."). We apply a bifurcated standard to such questions, reviewing the evidentiary factual findings for an abuse of discretion and the legal conclusions de novo. E-470 Pub. Highway Auth. v. 455 Co., 3 P.3d 18, 23 (Colo. 2000); see also Jehly, ¶ 8, 327 P.3d at 353 (noting that an appellate court defers to the trial court's credibility determinations, will not disturb the court's factual findings unless they are clearly erroneous and not supported by the record, and reviews de novo the court's application of the governing legal standards).

## III. Analysis

¶13 We first address section 10-4-609 to determine whether it precludes an agent from exercising implied or apparent authority to waive UM/UIM coverage on behalf of another named insured. After deciding that it does not, we turn to the facts of this case and conclude that the record amply supports the determination that Johnson's friend had implied authority to waive—and did, in fact, waive—UM/UIM coverage on Johnson's behalf. In light of this conclusion, and for the reasons discussed more fully below, we need not consider the meaning of "the named insured" in section 10-4-609's waiver provision.

## A. Common Law Agency Principles

■ ¶14 According to the division, section 10-4-609(1)(a) clearly and unambiguously "requires that each person listed as 'the named insured' must expressly waive UM/UIM coverage." Johnson, ¶ 75. Thus, the division opined, a named insured acting as an agent for another can waive UM/UIM coverage for the other only with the express actual authority to do so, id. at ¶ 76; common law principles of implied authority and apparent authority do not apply.[2] Concluding, then,

2. Observing that State Farm did not make the argument below, the division declined to address whether Johnson's friend acted with apparent authority when she rejected UM/UIM coverage.

Johnson, ¶ 73. Nevertheless, the division's categorical statement that one named insured can reject UM/UIM coverage for another "only with express actual authority to do so," id. at ¶ 76

that Johnson did not give his friend the express actual authority to waive UM/UIM coverage, the division determined that the friend's rejection of that coverage did not bind Johnson. Id. at ¶¶ 85–86. We disagree with the division's premises that an agent can waive UM/UIM coverage for another only with express authority and that principles of implied and apparent authority do not apply.

¶15 In Colorado, "[t]he common law of England ... shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority." § 2-4-211, C.R.S. (2016). Thus, the legislature may abrogate the common law, but to do so "it must manifest its intent either expressly or by clear implication." Van Waters & Rogers, Inc. v. Keelan, 840 P.2d 1070, 1076 (Colo. 1992). We will not lightly infer a legislative abrogation of the common law. See Kristensen v. Jones, 195 Colo. 122, 575 P.2d 854, 855 (1978).

¶16 Here, the legislature mandated the offer of UM/UIM coverage in section 10-4-609(1)(a), which provides:

No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42-7-103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.

(Emphasis added.)

¶17 Nowhere does this statute mention the common law—much less expressly abrogate

any part of it. Cf. § 18-1-104(3), C.R.S. (2016) ("Common-law crimes are abolished and no conduct shall constitute an offense unless it is described as an offense in this code or in another statute of this state."). Nor does the statute clearly imply a legislative intent to abrogate common law agency principles. Cf. Van Waters & Rogers, 840 P.2d at 1076 (concluding that section 13-21-111.6, C.R.S. (2016)'s mandate that a court "shall reduce the amount of [a] verdict" by the amount that a plaintiff receives from a collateral source evinces a clear intent by the General Assembly to change the common law collateral source rule and require damages to be set off by collateral source contributions not specifically excepted by the second clause of the statute, which applies to "a benefit paid as a result of a contract entered into and paid for by or on behalf of [the plaintiff]").

¶18 Accordingly, we conclude that section 10-4-609 did not abrogate the common law agency principles of implied actual authority and apparent authority, and thus, they remain in effect in the context of UM/UIM coverage rejections. The question before us therefore becomes one of agency: whether Johnson's friend had authority to reject UM/UIM coverage on his behalf.

## B. Authority To Waive UM/UIM Coverage

¶19 The common law of agency attributes the legal consequences of one person's action to another person on three distinct bases, two of which are pertinent here: apparent authority and actual authority. See Restatement (Third) of Agency ch. 2 Introductory Note (Am. Law Inst. 2006) (hereafter "Restatement (Third)") (explaining that actual authority, apparent authority, and respondeat superior provide three distinct bases for attribution); see also Willey v. Mayer, 876 P.2d 1260, 1264 (Colo. 1994) ("An agent can make his principal responsible for his actions if he is acting pursuant to either actual or apparent authority, regardless of whether the principal has knowledge of the agent's conduct.") (footnote omitted).

(emphasis added), indicates that it viewed all other types of authority (including apparent authority) as antithetical to its construction of section 10-4-609.

¶20 An agent has apparent authority to affect a principal's relations with a third party when the third party reasonably believes, based on the principal's manifestations, that the agent has authority to act on behalf of the principal. Restatement (Third), § 2.03. Apparent authority thus "flows only from the acts and conduct of the principal." Zions First Nat'l Bank v. Clark Clinic Corp., 762 P.2d 1090, 1095 (Utah 1988). Here, Johnson did nothing to lead State Farm to believe that his friend had authority to act on his behalf. Accordingly, we conclude that Johnson's friend lacked apparent authority to reject UM/UIM coverage on his behalf.

¶21 In comparison, "[a]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third), § 2.01. Actual authority thus incorporates concepts of both express and implied authority. Willey, 876 P.2d at 1264. Express authority exists when the principal directly states that the agent may perform a particular act on the principal's behalf. Id. We agree with the division that, in the instant case, no facts indicate that Johnson gave his friend express authority to waive UM/UIM coverage on his behalf. See Johnson, ¶ 76.

¶22 Implied authority, in turn, embraces the authority to perform acts that are "incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent." Willey, 876 P.2d at 1264 (quoting Zions, 762 P.2d at 1094); see also Restatement (Third), § 2.01 cmt. b (defining implied authority as "actual authority either (1) to do what is necessary, usual, and proper to accomplish or perform an agent's express responsibilities or (2) to act in a manner in which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent"). As a division of our court of appeals put it, "[i]mplied authority is express authority circumstantially proved."

Citywide Banks v. Armijo, 313 P.3d 647, 652 (Colo. App. 2011).

¶23 Here, the district court found, with ample record support, that after Johnson was unable to procure insurance for the new car on his own, he delegated to his friend the responsibility to purchase insurance for that car. This delegation was in keeping with Johnson's prior practice of deferring insurance matters to his estranged wife. The friend then approached State Farm, with whom she had enjoyed a long relationship. In the course of her conversation with a State Farm employee, the friend learned that the $100,000 in UM/UIM coverage that she already had on her primary car would cover everyone in her household (including Johnson), regardless of which car he or she was driving. Based on this information, the friend decided to avoid paying extra premiums for what amounted to double coverage and thus rejected the additional UM/UIM coverage.

¶24 In our view, the foregoing facts establish that Johnson's friend had implied authority to reject UM/UIM coverage on Johnson's behalf and that she properly did so. Although Johnson did not specifically instruct his friend to reject (or not to reject) UM/UIM coverage for the new car, that decision was necessary, usual, and proper to the purchase of insurance, which he expressly authorized her to undertake.

¶25 In this regard, we are persuaded by the Kansas Court of Appeals' reasoning in Ridgway v. Shelter Insurance Cos., 22 Kan. App.2d 218, 913 P.2d 1231 (1996), which is substantially on point with the present case. In Ridgway, the plaintiff had (1) instructed his girlfriend to procure insurance for him without placing limitations or restrictions on her and (2) "deferred the coverage specifics to [her], just as he had deferred the handling of other household financial matters to her." Id. at 1232–33, 1235. The girlfriend then procured insurance, waiving both UM and personal injury protection ("PIP") coverage when she did so. Id. at 1233. On these facts, applying the agency principles set forth above, the court concluded that the named insured's girlfriend "certainly had implied authority" to waive UM and PIP coverage on

his behalf. Id. at 1235. In our view, the same reasoning applies here.

¶26 We also note that our decision today is fully consistent with what the authors of a leading insurance treatise have described as "the growing trend": "[T]he growing trend is that a rejection of UM/UIM coverage or a selection of lower limits of UM/UIM limits by one named insured is binding on all named insureds and all additional insureds, rendering it unnecessary for insurers to obtain additional rejections or waivers from all named insureds and all potential additional insureds." 9 Steven Plitt, Daniel Maldonado, Joshua D. Rogers & Jordan R. Plitt, Couch on Insurance Third § 122:50, at 122-170 to - 171 (2015).

¶27 Accordingly, we conclude that Johnson's friend had the authority to reject UM/ UIM coverage on his behalf.

### C. Meaning of "The Named Insured"

¶28 In light of our foregoing conclusion, we need not consider the meaning of "the named insured" in section 10-4-609's waiver provision. Even if Johnson and the division below were correct that this provision requires the assent of each named insured, we conclude that this requirement was satisfied here. Specifically, pursuant to the agency principles discussed above, the legal consequences of a rejection of UM/UIM coverage by Johnson's agent (here, his friend) are attributable to Johnson himself. See Restatement (Third), ch. 2 Introductory Note. As a result, whatever "the named insured" may mean, it has no bearing on the outcome of the present case.

¶29 Accordingly, we conclude that the district court properly ruled that Johnson could not recover any additional UM/UIM benefits under the policy that his friend had procured on his behalf.

### IV. Conclusion

¶30 For these reasons, we reverse the judgment of the court of appeals and remand this case to that court for further proceedings consistent with this opinion.