The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 25, 2019

## 2022COA96

**No. 21CA0118, *Fresquez v. Trinidad Inn* — Health and Welfare
— Health Care Availability Act — Arbitration Agreements; ADR
— Arbitration; Agency — Actual Authority — Apparent
Authority**

A division of the court of appeals considers an agent's

authority to bind a principal to an arbitration agreement under the

Health-Care Availability Act (the Act), §§ 13-64-101 to -503, C.R.S.

2021.  While the Act details the steps a health care provider must

take to form an enforceable arbitration agreement with a patient, it

is silent regarding the requirements that a patient's agent must

satisfy to bind the patient to an arbitration agreement.  In this case,

the division considers the novel issue of whether an agent with

actual authority to execute the documents required to admit the

patient to a health care facility necessarily also possesses the

authority to bind the patient to an arbitration agreement with the facility.

The division holds that an agent's actual authority to make health care decisions for a patient and to sign the documents necessary to admit the patient to a health care facility does not encompass the authority to bind the patient to an arbitration agreement, unless the patient has granted the agent an unlimited power of attorney or otherwise clearly granted the agent the specific authority to bind the patient to an arbitration agreement.

COLORADO COURT OF APPEALS                          **2022COA96**

Court of Appeals No. 21CA0118
Las Animas County District Court No. 20CV30010
Honorable J. Clay McKisson, Judge

Ralph R. Fresquez, individually and as Personal Representative of the Estate of
Beatrice Trujillo, deceased,

Plaintiff-Appellee,

v.

Trinidad Inn, Inc., d/b/a Trinidad Inn; C&G Health Care Management, Inc.;
and Brittnee Fransua, in her Capacity as Administrator of Trinidad Inn,

Defendants-Appellants.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE LIPINSKY
Navarro and Kuhn, JJ., concur

Announced August 25, 2022

Reddick Law, PLLC, Brian D. Reddick, Robert W. Francis, Little Rock,
Arkansas, for Plaintiff-Appellee

Messner Reeves LLP, Douglas C. Wolanske, Kendra N. Beckwith, Mary Byrne
Fletcher, Darren D. Alberti, Denver, Colorado, for Defendants-Appellants

¶ 1     The Health-Care Availability Act (the Act), §§ 13-64-101 to -503, C.R.S. 2021, permits health care providers to ask their patients to sign arbitration agreements.  The General Assembly adopted the Act based on its belief that increasing the number of medical malpractice cases resolved through arbitration, rather than through the judicial system, would help "assure the continued availability of adequate health-care services . . . by containing the significantly increasing costs of malpractice insurance for medical care institutions."  § 13-64-102(1), C.R.S. 2021.

¶ 2     But patients cannot be compelled to surrender their right to sue health care providers in a court of law.  The Act specifies that, although a health care provider may ask a patient to sign an arbitration agreement, the patient may not be denied care if the patient refuses to sign the agreement or timely exercises the statutory right to rescind an arbitration agreement the patient previously signed.  Thus, a patient must be admitted to a hospital, skilled nursing facility, or other health care facility even though the patient declined to consent to arbitrate future disputes involving the facility.

¶ 3    Significantly, although the Act details the steps a health care provider must take to form an enforceable arbitration agreement with a patient, it is silent regarding the requirements that a patient's agent must satisfy to bind the patient to an arbitration agreement.  In this case, we consider the novel issue of whether an agent with actual authority to execute the documents required to admit a patient to a health care facility necessarily also possesses the authority to bind the patient to an arbitration agreement with the facility.

¶ 4    We hold that when an agent has authority to execute the documents necessary for admission of a patient to a health care facility, such authority does not, without more, encompass the authority to bind the patient to an arbitration agreement where the patient was unaware the facility would ask the agent to sign an arbitration agreement and the patient never discussed arbitration with the agent or with representatives of the facility.

¶ 5    In his lawsuit against defendants, Trinidad Inn, Inc., a skilled nursing facility; C&G Health Care Management, Inc., which owns, operates, and manages Trinidad Inn; and Brittnee Fransua, in her capacity as administrator of Trinidad Inn (collectively, the Trinidad

defendants), plaintiff, Ralph R. Fresquez, alleged that their negligence caused the death of Fresquez's mother, Beatrice Trujillo, while she was a resident at Trinidad Inn. The Trinidad defendants moved to compel arbitration based on an arbitration agreement that Fresquez signed, purportedly in his capacity as Trujillo's agent, at the time of Trujillo's admission to Trinidad Inn. Following an evidentiary hearing, the district court denied the Trinidad defendants' motion on the grounds that the arbitration agreement was invalid.

¶ 6    The Trinidad defendants appeal the district court's order denying their motion to compel arbitration. We affirm.

## I.    Background

¶ 7    Trujillo decided to move into Trinidad Inn after finding it difficult to live alone. Fresquez assisted Trujillo with her admission to Trinidad Inn. As part of this process, he provided the social services assistant at Trinidad Inn with a referral packet from Trujillo's primary care physician. The referral packet included a note from the physician saying that "attorney is requesting nursing home placement" for Trujillo. The social services assistant said she

believed the reference to "attorney" meant that Trujillo had executed a power of attorney authorizing Fresquez to act on her behalf.

¶ 8 Fresquez coordinated Trujillo's admission to Trinidad Inn with the social services assistant. The social services assistant testified that, at the time of Trujillo's admission, Fresquez told her that he held a power of attorney for Trujillo. The social services assistant never saw any such power of attorney, however.

¶ 9 Fresquez recalled that, shortly after he and Trujillo arrived at Trinidad Inn for Trujillo's admission, the social services assistant called him to her office "to sign . . . papers." One of those papers was a "Voluntary Agreement for Arbitration" (the arbitration agreement). The arbitration agreement stated that "[t]he parties agree that they shall submit to binding arbitration all disputes against each other." It defined the parties as "Trinidad Inn, including its Owners, Managers, Employees, and Agents," and "the Resident." The arbitration agreement defined "the Resident" as Trujillo and her "family, estate, heirs, personal representatives, or . . . any person claiming that a duty of care arises from [Trujillo's] stay and care at [Trinidad Inn]."

¶ 10     Fresquez later said that he signed the arbitration agreement, together with the other documents the social services assistant provided to him, because he believed that Trinidad Inn would not admit Trujillo if he did not sign it.  No representative of Trinidad Inn discussed the arbitration agreement or the other documents with Trujillo.  Trujillo died six months after her admission to Trinidad Inn.

¶ 11     In denying the Trinidad defendants' motion to compel arbitration, the district court ruled that (1) Fresquez possessed actual authority to bind Trujillo to the arbitration agreement; (2) the "rule of equal dignities" invalidated such authority, however, because no document memorialized Fresquez's authority; and (3) Fresquez lacked apparent authority to bind Trujillo to the arbitration agreement.

## II.    Analysis

¶ 12     The Trinidad defendants contend that the district court erred by ruling that the arbitration agreement was invalid.  They specifically argue that Trujillo granted Fresquez actual authority to bind her to the arbitration agreement and that the equal dignities rule does not apply here, even though no writing memorialized

5

Fresquez's authority to act on behalf of Trujillo at the time of Trujillo's admission to Trinidad Inn. In the alternative, they contend that Fresquez possessed apparent authority to bind Trujillo to the arbitration agreement.

## A. Standard of Review

¶ 13 "We review de novo the district court's decision on a motion to compel arbitration." *Lujan v. Life Care Ctrs. of Am.*, 222 P.3d 970, 972 (Colo. App. 2009). "In considering a motion to compel arbitration, the district court must first determine whether a valid agreement to arbitrate exists between the parties to the action." *Id.* "The court may properly refuse to compel arbitration only when there is no valid agreement to arbitrate or when the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision." *Id.* "Whether a valid agreement to arbitrate exists is a matter of law that we review de novo." *Id.*

¶ 14 In this case, the validity of the arbitration agreement hinges on the existence and scope of any agency relationship between Trujillo and Fresquez and, specifically, whether Fresquez possessed the authority to bind Trujillo to the arbitration agreement. "Whether an agency relationship exists generally is a question of fact, though the

6

court may decide the question as one of law when the facts are undisputed." *Villalpando v. Denver Health & Hosp. Auth.*, 181 P.3d 357, 363 (Colo. App. 2007); *see also Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 180 (5th Cir. 2016) (holding that the scope of a son's actual authority to bind his mother to a nursing home's arbitration agreement was "a question of fact"); *Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. App. 2004) ("The issue of apparent authority is generally an issue of fact to be determined by the trial court. . . . However, if the underlying facts are undisputed, fact finding is not required, and the legal effect of those facts constitutes a question of law.").

¶ 15    "On appeal, we review the trial court's factual findings under a clear error standard." *Villalpando*, 181 P.3d at 363. We "won't disturb such findings if there is any evidence in the record supporting them." *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 24, 490 P.3d 598, 606, *aff'd*, 2021 CO 56, 489 P.3d 735.

## B. Applicable Law

### 1. Arbitration Agreements Under the Act

¶ 16    As a general rule, Colorado favors arbitration agreements. *See J.A. Walker Co. v. Cambria Corp.*, 159 P.3d 126, 128 (Colo. 2007). But health care arbitration agreements, unlike other types of arbitration agreements, are subject to strict requirements set forth in the Act. *See* § 13-64-403, C.R.S. 2021. Although "the [Act] allows arbitration of disputes, [it] also contains protective provisions curbing abusive practices in obtaining agreements to arbitrate." *Moffett v. Life Care Ctrs. of Am.*, 219 P.3d 1068, 1073 (Colo. 2009).

¶ 17    The Act provides that arbitration agreements must be voluntary. § 13-64-403(1) ("It is the intent of the general assembly that an arbitration agreement be a voluntary agreement between a patient and a health-care provider . . . ."). It specifies that "[n]o health-care provider shall refuse to provide medical care services to any patient solely because such patient refused to sign [an arbitration agreement] or exercised the ninety-day right of rescission." § 13-64-403(7). Health care providers must include this statutory language, among other required disclosures, in any agreement with a patient containing an arbitration provision.

8

§ 13-64-403(4). The statement must appear "[i]mmediately preceding the signature lines for such an agreement . . . printed in at least ten-point, bold-faced type." *Id.* A health care provider's failure to comply with these statutory requirements renders a health care arbitration agreement unenforceable. *Johnson v. Rowan Inc.*, 2021 COA 7, ¶ 24, 488 P.3d 1174, 1179.

## 2. Actual Authority

¶ 18 "[A]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *State Farm Mut. Auto. Ins. Co. v. Johnson*, 2017 CO 68, ¶ 21, 396 P.3d 651, 656 (quoting Restatement (Third) of Agency § 2.01 (Am. L. Inst. 2006)). Actual authority is premised on "a principal's expressive conduct toward an agent, through which the principal manifests assent to be affected by the agent's action, and the agent's reasonable understanding of the principal's manifestation." Restatement (Third) of Agency § 2.01 cmt. c.

¶ 19 "The focal point for determining whether an agent acted with actual authority is the agent's reasonable understanding at the time

9

the agent takes action." *Id.* "An agent has actual authority to take action designated or implied in the principal's manifestations to the agent and acts necessary or incidental to achieving the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives when the agent determines how to act." *Id.* § 2.02(1). "The context in which principal and agent interact, including the nature of the principal's . . . personal situation, frames the reasonableness of an agent's understanding of the principal's objectives." *Id.* § 2.02 cmt. e. "An agent's actual authority encompasses acts necessary to accomplish the end the principal has directed that the agent achieve." *Id.*

¶ 20    The inquiry into whether an agent possessed the actual authority to execute a document on behalf of the principal "contains both an objective and a subjective component: the agent must subjectively hold the belief that [he] possesses authority, and that belief must be objectively reasonable in light of the principal's actions." *Stein Eriksen Lodge Owners Ass'n v. MX Techs. Inc.*, 2022 UT App 30, ¶ 26, 508 P.3d 138, 147 (citing Restatement (Third) of Agency § 2.02 cmt. e).

¶ 21   Actual authority incorporates concepts of express and

implied authority. *State Farm*, ¶ 21, 396 P.3d at 656. "Express

authority exists when the principal directly states that the agent

may perform a particular act on the principal's behalf." *Id.* In

contrast, implied authority includes "the authority to perform acts

that are 'incidental to, or are necessary, usual, and proper to

accomplish or perform, the main authority expressly delegated to

the agent.'" *Id.* at ¶ 22, 396 P.3d at 656 (quoting *Willey v. Mayer*,

876 P.2d 1260, 1264 (Colo. 1994)); *see* Restatement (Third) of

Agency § 2.01 cmt. b (stating that implied authority is "actual

authority either (1) to do what is necessary, usual, and proper to

accomplish or perform an agent's express responsibilities or (2) to

act in a manner in which an agent believes the principal wishes the

agent to act based on the agent's reasonable interpretation of the

principal's manifestation in light of the principal's objectives and

other facts known to the agent"). "Implied authority is actual

authority circumstantially proved." *Citywide Banks v. Armijo*, 313

P.3d 647, 652 (Colo. App. 2011).

¶ 22   In *Moffett*, the supreme court held that a patient's attorney-in-

fact possesses the authority to bind the patient to an arbitration

agreement under the Act where the governing power of attorney does not limit the agent's authority "to waive the right to a jury trial and submit to arbitration" on behalf of the patient. 219 P.3d at 1076. The supreme court concluded in *Moffett* that the patient's attorney-in-fact was authorized to bind the patient to an arbitration agreement "[a]bsent a restriction or limitation on his authority under the [power of attorney] he holds." *Id.* at 1079. "The [Act] and Colorado's recognized policy favoring arbitration coexist with well-established statutory and common law doctrines governing agency and [powers of attorney]." *Id.* at 1074.

¶ 23    For purposes of section 13-64-403, the section of the Act addressing arbitration agreements, "the term 'patient' . . . includes a person acting with legal authority under a [power of attorney] to enter into such an agreement on behalf of [an] incapacitated patient." *Id.* The authority of the person acting on behalf of the patient can arise from a source other than a power of attorney. *See id.* at 1078 ("[S]ection 13-64-403 cannot be read without regard for the extensive statutory and common law doctrine permitting authorized agents to bind principals in all kinds of contracts, including arbitration agreements."); *Lujan*, 222 P.3d at 977 (holding

12

that a determination of an agent's scope of authority under a medical durable power of attorney must include an analysis of the "*common law agency principles* or applicable statutory powers of attorney") (emphasis omitted).

¶ 24 *Moffett* teaches that courts must carefully scrutinize the scope of an agent's actual authority to determine whether the agent was empowered to bind a patient to a health care arbitration agreement. The reasoning of *Moffett*, therefore, is not limited to cases in which the principal executed a power of attorney. For this reason, courts must apply the law of agency, subject to the restrictions imposed under the Act, to determine whether a patient's agent is authorized to waive the patient's right to seek damages in a court of law.

### 3. Apparent Authority

¶ 25 In contrast to actual authority, "[a]pparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties *when a third party reasonably believes* the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement (Third) of Agency § 2.03 (emphasis added). "Apparent authority . . . 'flows only from the acts and conduct of the principal.'" *State Farm,*

13

¶ 20, 396 P.3d at 656 (quoting *Zions First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1095 (Utah 1988)).  It is "established by proof of 'written or spoken words or other conduct of the principal which, reasonably interpreted, causes a person to believe that the principal consents to have the act done on his behalf by a person purporting to act for him.'"  *Villalpando*, 181 P.3d at 363 (quoting *Lucero v. Goldberger*, 804 P.2d 206, 209 (Colo. App. 1990)).

### C.    Fresquez Lacked Actual Authority to Bind Trujillo to the Arbitration Agreement

¶ 26    We now turn to the nature of the authority that Trujillo granted to Fresquez and whether, under that authority, Fresquez could bind Trujillo to the arbitration agreement.  This analysis requires us to determine the type of authority that Trujillo provided to Fresquez and the scope of that authority.  The parties agree, and the record reflects, that Trujillo never executed a power of attorney appointing Fresquez as her agent before Fresquez signed the arbitration agreement.

#### 1.    The District Court Did Not Clearly Err by Finding that Fresquez Possessed Actual Authority to Make Health Care

14

¶ 27    Based on undisputed evidence presented at the hearing, the district court found that

- Trujillo wanted Fresquez to make decisions regarding her medical care and her admission to Trinidad Inn;

- Fresquez possessed actual authority to "make admission decisions and sign documents for the purpose of having [Trujillo] admitted to Trinidad Inn";

- before Trujillo's admission, Trujillo manifested her assent for Fresquez to sign such documents;

- Fresquez "signed the admission documents so that [Trujillo] could be admitted" to Trinidad Inn;

- Fresquez "reasonably believed that he was carrying out [Trujillo's] wishes when he signed the admission documents"; and

- "Trujillo's actions and statements after her admission corroborate [Fresquez's] testimony that he was authorized to make admission decisions and sign

documents for the purpose of having her admitted to Trinidad Inn."

¶ 28     The evidence confirms that Trujillo wanted Fresquez to act as her agent in making medical care decisions on her behalf, including the decisions necessary for her admission to Trinidad Inn.  We thus conclude that the district court did not clearly err by finding that Fresquez possessed actual authority to make medical care decisions for Trujillo and to execute the admission documents on her behalf.

### 2.     The District Court Erred by Determining that Fresquez Possessed Actual Authority to Bind Trujillo to the Arbitration Agreement

¶ 29     The district court's characterization of Fresquez's actual authority did not stop with its finding that Trujillo authorized Fresquez to make medical care decisions for her and to execute Trinidad Inn's admission documents on her behalf.  The district court also said that, by signing the arbitration agreement, Fresquez was "making an admission decision for . . . Trujillo" and "the [arbitration agreement] was within the scope of documents that [Trujillo] gave [Fresquez] authority to sign."

¶ 30     These statements can be read in one of two ways.  They can be read as further findings of fact.  Alternatively, they can be

interpreted as a legal conclusion that, under the Act, Fresquez's actual authority "to make admission decisions and sign documents for the purpose of having her admitted to Trinidad Inn" necessarily meant he possessed the authority to bind Trujillo to the arbitration agreement.

¶ 31 If the district court's statements are findings of fact based on evidence presented at the hearing, we review them for clear error. *See Villalpando*, 181 P.3d at 363. If they are a legal determination, we review de novo whether, under the Act, Fresquez's authority to "make admission decisions" and sign admission documents for Trujillo necessarily encompassed the authority to bind Trujillo to the arbitration agreement. *See Johnson*, ¶ 16, 488 P.3d at 1178.

a. If the District Court's Statements Regarding Fresquez's Authority to Bind Trujillo to the Arbitration Agreement Were Findings of Fact, They Were Clearly Erroneous

¶ 32 The record does not establish that, based on Trujillo's "expressive conduct," Fresquez reasonably understood that Trujillo wished for him to waive her right to seek a legal remedy through the judicial system. *See* Restatement (Third) of Agency § 2.01 cmt. c (explaining that determining whether the agent is authorized to perform certain acts requires both the "principal's expressive

17

conduct" and the agent's "reasonable understanding" of the principal's wishes manifested through that conduct).

¶ 33    The district court did not find, and the record does not show, that Trujillo and Fresquez ever discussed the arbitration agreement specifically or the concept of arbitration generally. The record contains no evidence that any of Trujillo's words or conduct related in any way to arbitration. Therefore, the district court had no evidentiary basis to support a finding of fact that Fresquez reasonably understood that Trujillo had granted him actual authority to bind her to the arbitration agreement.

¶ 34    The Trinidad defendants argue that, because Fresquez made certain financial and administrative decisions on Trujillo's behalf, his actual authority necessarily extended to binding Trujillo to the arbitration agreement. But the record shows that those financial and administrative decisions related exclusively to Trujillo's admission to and residency at Trinidad Inn. Such decisions were thus "incidental to, or [were] necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent." *State Farm*, ¶ 22, 396 P.3d at 656 (quoting *Willey*, 876 P.2d at 1264); *see* Restatement (Third) of Agency § 2.01 cmt. b.

¶ 35    For the same reasons, to the extent the district court found that Fresquez reasonably believed he possessed the authority to bind Trujillo to the arbitration agreement simply because he was authorized to make health care decisions for her and to sign the admission documents, such finding was also clearly erroneous. The arbitration agreement expressly stated, consistent with the Act, that Trinidad Inn could not "refuse to provide medical care services" to a patient who declined to sign it. For this reason, the arbitration agreement cannot be reasonably understood to be an "admission document." Thus, nothing in the record indicated that Fresquez could have reasonably believed, through Trujillo's expressed wish that he make health care decisions for her and sign the admission documents, that he possessed actual authority to bind Trujillo to the arbitration agreement. Rather, the record shows that, as Trujillo was being admitted to Trinidad Inn, the social services assistant handed Fresquez documents and he signed them.

¶ 36    Based on the district court's findings of fact, supported by the evidence, that Fresquez's actual authority included making medical care decisions for Trujillo and executing the documents necessary for Trujillo's admission to Trinidad Inn, we next turn to the legal

19

question of whether, under the Act, such authority necessarily encompassed the authority to bind Trujillo to the arbitration agreement.

    b.    If the District Court's Statements Regarding Fresquez's Authority to Bind Trujillo to the Arbitration Agreement Were a Legal Determination, They Were Erroneous

¶ 37    "An agent has a duty to take action only within the scope of the agent's actual authority."  Restatement (Third) of Agency § 8.09.  In other words, "[i]n the context of the agent's relationship with the principal, the boundary of an agent's rightful action is the scope of the agent's actual authority."  *Id.* § 8.09 cmt. b.  "An agent's actual authority encompasses acts necessary to accomplish the end the principal has directed that the agent achieve."  *Id.* § 2.02 cmt. e; *see also State Farm*, ¶ 22, 396 P.3d at 656.

¶ 38    Here, the "end" that Trujillo directed Fresquez to achieve was her admission to Trinidad Inn so she could receive medical care at that facility.  The district court found that "Trujillo's actions and statements after her admission corroborate [Fresquez's] testimony that he was authorized to make admission decisions and sign documents *for the purpose of having her admitted* to Trinidad Inn."  (Emphasis added.)

20

¶ 39    In making its determination that Fresquez's actual authority regarding health care and admission decisions included the authority to bind Trujillo to the arbitration agreement, the district court distinguished *Lujan* on four grounds: (1) this case does not involve a health care proxy, and Trujillo was neither incapacitated nor mentally incompetent at the time of her admission to Trinidad Inn; (2) Trujillo chose her decision-maker and relied on him for that purpose; (3) Trujillo "determined that [Fresquez] had authority to make decisions on her behalf that included decisions related to her admission at Trinidad Inn"; and (4) this case involves evidence of "a formal understanding" between Fresquez and Trujillo regarding the existence and scope of Fresquez's authority.  We disagree that the reasoning of *Lujan* is inapposite here.

¶ 40    We acknowledge that, in *Lujan*, a division of this court considered whether a designated health care proxy is empowered to bind an incapacitated patient to an arbitration agreement.  222 P.3d at 971.  But, despite the narrowness of the issue presented in *Lujan*, the division's discussion of the distinction between the documents required to admit a patient to a skilled nursing facility and an arbitration agreement is pivotal to our analysis.  *Id.* at 973-

74.  Particularly relevant here, the division contrasted a health care proxy's statutorily prescribed authority with the more expansive authority that a principal-agent relationship can create.  *Id.* at 973.

¶ 41     "[A] health care proxy is distinct from an attorney-in-fact acting under a power of attorney."  *Id.* at 977.  The division reasoned that "the statutory authority afforded a health care proxy should be construed narrowly, unlike the broad powers presumed to be afforded under a medical durable power of attorney."  *Id.*; *see also Moffett v. Life Care Ctrs. of Am.*, 187 P.3d 1140, 1145 (Colo. App. 2008) ("[A]bsent a limitation in the medical durable power of attorney, an attorney-in-fact can make exactly the same types of medical treatment decisions that the principal could make if he or she had the mental capacity to do so."), *aff'd*, 219 P.3d 1068.

¶ 42     *Lujan*'s reasoning is not limited to cases involving health care proxies, which are executed on behalf of a patient who "lacks decisional capacity to provide informed consent to or refuse medical treatment."  222 P.3d at 972.  The division in *Lujan* noted the "clear legislative intent to distinguish between an agreement to provide medical services (including an agreement to admit a patient to a

22

health care facility) and an agreement to arbitrate a health care dispute." *Id.* at 974 (citing § 13-64-403(7)).

¶ 43    For purposes of the health care proxy provisions at issue in *Lujan,* "medical treatment" means "specific medical procedures (e.g., artificial nourishment and hydration) or forms of healing (e.g., religious and spiritual healing)." *Id.* (citing § 15-18.5-101(1)(a), (2), C.R.S. 2021). In addition, the part of the probate code addressing powers of attorney similarly defines "'medical treatment' as 'the provision, withholding, or withdrawal of any health care, medical procedure, including artificially provided nourishment and hydration, surgery, cardiopulmonary resuscitation, or service to maintain, diagnose, treat, or provide for a patient's physical or mental health or personal care.'" *Id.* at 973 (quoting § 15-14-505(7), C.R.S. 2021).

¶ 44    According to the division in *Lujan,* under either definition, an agent's authority to make decisions regarding a patient's "medical treatment" does not encompass the authority to sign an arbitration agreement. *Id.* at 974. Importantly, the division in *Lujan* held that a decision to execute an arbitration agreement "is not integral to a patient's health and well-being." *Id.* at 976. Instead, a decision to

23

arbitrate pertains exclusively to a person's legal rights and remedies. *See* Colo. Const. art. XVIII, § 3; §§ 13-22-201 to -230, C.R.S. 2021. Thus, a decision to arbitrate, or not to arbitrate, is fundamentally different from a decision involving medical treatment.

¶ 45 In examining the scope of the authority granted to an agent through a health care proxy, the *Lujan* court noted section 13-64-403(7)'s express prohibition on conditioning the provision of medical services upon execution of an arbitration agreement. *Lujan*, 222 P.3d at 974. The General Assembly's decision to delink the concept of arbitration from the concept of providing medical services underscores that granting an agent authority to make medical care decisions for a patient does not authorize the agent to waive the patient's right to seek relief in a court of law. Thus, the authority of an agent to execute an arbitration agreement on behalf of a patient must rest on a source other than the agent's authorization to make health care decisions for the patient.

¶ 46 Following the compelling logic of *Lujan* and the language of the Act, we hold that an agent's actual authority to make health care decisions for a patient and to sign the documents necessary to

24

admit the patient to a health care facility does not encompass the authority to bind the patient to an arbitration agreement, unless the patient has granted the agent an unlimited power of attorney or otherwise clearly granted the agent the specific authority to bind the patient to an arbitration agreement. Thus, we conclude that, as a matter of law, the scope of Fresquez's actual authority did not extend to binding Trujillo to the arbitration agreement. In light of our holding, we need not consider whether the district court erred by holding that Fresquez lacked authority to bind Trujillo to the arbitration agreement under the rule of equal dignities.

### D. The District Court Did Not Err By Finding That Fresquez Lacked Apparent Authority

¶ 47 Having concluded that Fresquez lacked actual authority to bind Trujillo to the arbitration agreement, we next review the district court's determination that he also lacked apparent authority to do so. "The issue of apparent authority is generally an issue of fact to be determined by the trial court." *Rush Creek*, 107 P.3d at 406. Apparent authority can apply to "agents who act beyond the scope of their actual authority." Restatement (Third) of Agency § 2.03 cmt. a.

25

¶ 48    We conclude that the district court did not clearly err by making this finding.

### 1.    Fresquez Did Not Have Apparent Authority to Bind Trujillo to the Arbitration Agreement

¶ 49    The Trinidad defendants argue that the district court erred by requiring that "a principal's manifestation of an agent's authority to act be made prior to the act in question." They contend that the district court improperly inserted a temporal requirement into the apparent authority analysis by considering only Trujillo's statements and conduct preceding Fresquez's execution of the arbitration agreement. They further argue that the Restatement of Agency rejects this temporal requirement by providing that apparent authority "applies to *any* set of circumstances under which it is reasonable for a third party to believe that an agent has authority." Restatement (Third) of Agency § 2.03 cmt. c (emphasis added).

¶ 50    We need not consider the timing of a principal's manifestations of an agent's apparent authority, however, because the record lacks any evidence that Trujillo ever gave any manifestations regarding arbitration. As the district court found,

26

Trujillo generally knew of and authorized Fresquez to sign the documents and make the decisions related to her admission to and care at Trinidad Inn, both before and after she moved in. But the Trinidad defendants could not have reasonably believed that Fresquez also possessed apparent authority to sign the arbitration agreement on Trujillo's behalf.

¶ 51 The district court based its finding that Fresquez lacked apparent authority to bind Trujillo to the arbitration agreement on the testimony of the social services assistant and Fransua, Trinidad Inn's administrator, at the hearing. Those employees conceded that, before Trujillo's admission to Trinidad Inn, she did not make any manifestation to them, whether by word or deed, that Fresquez was authorized to bind her to the arbitration agreement.

¶ 52 Indeed, nothing Trujillo said or did at any time suggested that she was aware of the arbitration agreement or that she intended to grant Fresquez the authority to sign away her right to a trial in a court of law. Moreover, the record does not contain any evidence suggesting that Trujillo ever learned of the existence of the arbitration agreement.

¶ 53    The social services assistant's and Fransua's testimony does not indicate otherwise.  The social services assistant testified that (1) she received paperwork from Trujillo's referring doctor saying that Trujillo's "attorney" wanted Trujillo to move to a nursing home; (2) the social services assistant coordinated Trujillo's move to Trinidad Inn with Fresquez; and (3) Fresquez signed the admission documents while Trujillo settled into her room.  Fransua testified that she believed Fresquez was Trujillo's representative for purposes of signing the arbitration agreement because he "was present with [Trujillo] in asking [the primary care physician] for the nursing home placement," and he and Trujillo "work[ed] towards that goal of getting [Trujillo] in the nursing home."  This testimony supports the district court's finding that Fresquez lacked apparent authority to bind Trujillo to the arbitration agreement.

¶ 54    Although the district court found that Fresquez told the Trinidad defendants he was Trujillo's attorney-in-fact, neither the social services assistant nor Fransua ever saw such a power of attorney.  (A power of attorney must be in writing.  *See Willey*, 876 P.2d at 1264 (explaining that a power of attorney is "a written document by which one party, as principal, appoints another as

28

agent (attorney-in-fact) and confers upon the latter the authority to perform certain specified acts or kinds of acts on behalf of the principal").)

¶ 55    Further, the Trinidad defendants contend that the purpose of the apparent authority doctrine is to "protect[] third parties who, in good faith, rely on their belief that an agency relationship exists between the apparent principal and agent." *See Villalpando*, 181 P.3d at 363.  But nothing in the record shows that they relied on their belief that Fresquez possessed the authority to bind Trujillo to the arbitration agreement.  As noted in Part II.B.1 *supra*, Trinidad Inn could not have refused admission to Trujillo even if the Trinidad defendants learned at the time that Trujillo had not executed a power of attorney.  Thus, consistent with section 13-64-403 of the Act, the validity of the arbitration agreement, and Fresquez's authority to bind Trujillo to it, was of no consequence to Trinidad Inn's decision to admit Trujillo.

¶ 56    The Trinidad defendants further assert that their reliance on Trujillo's manifestations following Fresquez's execution of the arbitration agreement "caused [them] to forebear pressing further for the power of attorney . . . or to request a signature from . . .

29

Trujillo" on the arbitration agreement. But nothing in the record supports this assertion.

¶ 57 Indeed, the social services assistant asked Fresquez to provide her with a copy of the power of attorney after Trujillo's admission. But she dropped the subject after contacting him about it "a few times." The social services assistant's testimony undercuts the Trinidad defendants' argument that Trujillo's manifestations caused them to forebear pressing Fresquez further for the purported power of attorney. The social services assistant did not say that she stopped asking Fresquez for the power of attorney based on anything Trujillo said or did. And nothing in the record indicates that Trujillo would have signed the arbitration agreement if Trinidad Inn had asked her to do so or that Trujillo's manifestations induced the Trinidad defendants not to ask her to sign it.

¶ 58 In sum, Trujillo's words and actions indicated only that Fresquez possessed the authority to make decisions related to Trujillo's medical care and her admission to Trinidad Inn. Trujillo never made any manifestations indicating that Fresquez also had the authority to bind her to the arbitration agreement. *See Lujan,* 222 P.3d at 976. Thus, we affirm the district court's determination

that Fresquez lacked apparent authority to execute the arbitration agreement on Trujillo's behalf.

### 2. Trujillo Did Not Ratify the Arbitration Agreement

¶ 59 For the same reasons, we conclude that Trujillo did not ratify the arbitration agreement. The Trinidad defendants argue that, even if Fresquez lacked apparent authority to bind Trujillo to the arbitration agreement, Trujillo later ratified his execution of the arbitration agreement through her "knowledge that [Fresquez] was making decisions on her behalf without objection — even without specific knowledge of the [arbitration agreement]."

¶ 60 Ratification occurs "when a party 'with knowledge of all material facts' adopts and confirms an act performed or entered into on his behalf by another, without authorization." *Fiscus v. Liberty Mortg. Corp.*, 2014 COA 79, ¶ 40, 373 P.3d 644, 652 (quoting *Siener v. Zeff*, 194 P.3d 467, 471 (Colo. App. 2008)), *aff'd on other grounds*, 2016 CO 31, 379 P.3d 278. Here, Trujillo did not possess "full knowledge of all material facts." *Id.* The district court did not find that Trujillo ever knew of the existence or terms of the arbitration agreement.

31

¶ 61    Therefore, we conclude that Trujillo did not ratify Fresquez's execution of the arbitration agreement.

## III.    Conclusion

¶ 62    The order denying the Trinidad defendants' motion to compel arbitration is affirmed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE NAVARRO and JUDGE KUHN concur.